Marquis DIAMOND, Appellant

v.

The STATE of Texas, Appellee

NO. 14–14–00244–CR

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed June 7, 2016

Discretionary Review Refused October 19, 2016

Wayne T. Hill, Houston, TX, for Appellant.

Jessica Akins, Houston, TX, for State.

Panel consists of Chief Justice Frost and Justices Boyce and Wise.

## OPINION

Kem Thompson Frost, Chief Justice

In challenging his conviction for capital murder, appellant Marquis Diamond makes a variety of arguments, including that his conviction is not supported by sufficient evidence and that the trial court abused its discretion in denying his motion to suppress his custodial statements, in admitting into evidence without authentication phone calls appellant made from jail, and in overruling other objections appellant made throughout the course of trial. We affirm.

### I. Factual and Procedural Background

The complainant, Steven Ogden, and his brother moved from a nursing home to an apartment complex. There, they met another resident, Tommie Lee Nicholson. Nicholson offered to drive Ogden to a social security office and then to a check-cashing establishment so that Ogden could retrieve his social security check and get cash for it. The next morning, Ogden left with Nicholson and two of Nicholson's associates, David Kindle and Bilal Williams. The group traveled to the social security office in two cars. Williams, the driver of one of the cars, left while Ogden was at the social security office. Kindle and Nicholson then took Ogden to a check-cashing establishment, where Ogden cashed his social security check. Kindle and Nicholson then drove Ogden to an apartment complex, where Nicholson once lived. Appellant met up with Kindle and Nicholson at the apartment complex and then fired four gunshots at Ogden.

Emergency responders dispatched to the apartment complex discovered Ogden in the back seat of a black sport-utility vehicle. According to firefighter Verel Wilson, Ogden was bleeding from the mouth and leg. He was not breathing and had no pulse. Wilson pronounced Ogden dead.

Meanwhile, Ogden's brother became worried about Ogden's whereabouts and tried to communicate with Nicholson. Nicholson did not respond.

Detective Isaac Duplechain responded to the scene and noted that Ogden's wallet was missing. Police officers recovered three fired shell casings at the crime scene. A witness told police officers that he heard gunshots and saw a man fumbling with a gun. The witness said the man with the gun got into a burnt red sedan and left the scene. Police officers noticed appellant's vehicle, a maroon Mercury Sable that matched the witness's vehicle description, parked near one of the residences connected to Nicholson.

Phone records showed that appellant was in contact with Nicholson and Kindle at the time of the shooting. Appellant had contacted Ogden for the first time the day

before the shooting and had met with Nicholson the night before. Text messages between appellant and Nicholson, including a message telling appellant to "Check the pockets and take the W," suggested appellant was involved in the episode. Police officers arrested appellant and inventoried his vehicle. Inside, officers found a gun that matched a witness's description of a gun the witness saw at the scene. Shell casings left at the scene were fired from the gun found in appellant's car.

Charged with capital murder, appellant pleaded "not guilty." The jury found appellant guilty as charged, and the trial court sentenced him to life confinement.

## II. ANALYSIS

### A. Sufficiency of the Evidence

■ In appellant's first issue, appellant challenges the sufficiency of the evidence to support his conviction. In evaluating a challenge to the sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App.2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Crim.App.1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex.Crim.App.1991). The jury "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex.Crim.App.1999). The jury may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986). When faced with conflicting evidence, we presume the jury resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex.Crim.App.1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim.App.1997).

■ The indictment alleged that appellant, while in the course of committing and attempting to commit robbery, intentionally caused Ogden's death by shooting him with a deadly weapon, namely a firearm. A person commits capital murder if the person intentionally causes the death of an individual in the course of committing or attempting to commit robbery. *See* Tex. Penal Code §§ 19.02(b), 19.03(a) (West 2016); *Owolabi v. State*, 448 S.W.3d 148, 150 (Tex.App.–Houston [14th Dist.] 2014, no pet.). Direct evidence of the elements of the offense, including the identity of the perpetrator and culpable mental state, is not required. *Mayreis v. State*, 462 S.W.3d 569, 573 (Tex.App.–Houston [14th Dist.] 2015, pet. ref'd). The jury is permitted to make reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor. *Hooper v. State*, 214 S.W.3d 9, 14 (Tex.Crim.App.2007). "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both." Tex. Penal Code § 7.01(a) (West 2016); *Cerna v. State*, 441 S.W.3d 860, 864 (Tex.App.–Houston [14th Dist.] 2014, pet. ref'd).

The trial court instructed the jury on the law of parties under Penal Code section 7.02(a)(2) and the law of conspiracy under Penal Code section 7.02(b). *See* Tex. Penal Code § 7.02 (West 2016). Under section 7.02, "[a] person is criminally responsible for an offense committed by

the conduct of another if: ... (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2); *Cerna*, 441 S.W.3d at 864. If, in the attempt to carry out a conspiracy to commit kidnapping, burglary, or robbery, capital murder is committed by one of the conspirators, all conspirators are guilty of the capital murder actually committed, though having no intent to commit it, if the capital murder was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy. *See* Tex. Penal Code § 7.02(b); *Cerna*, 441 S.W.3d at 864.

The evidence at trial showed the following:

- Ogden did not have transportation, and Nicholson offered to take Ogden to the social security office so that Ogden could receive a social security check. Nicholson also offered to take Ogden to a place where Ogden could cash the check.

- The night before the shooting, Nicholson asked appellant to come get him from Kindle's house. Appellant later picked up Nicholson, and the two were together. The next morning, Nicholson's phone sent appellant's phone a text that read, "Check all pockets and take the W." Officer Duplechain testified the text meant that appellant should check all the pockets and take the wallet.

- Kindle, Nicholson, and Williams escorted Ogden to the social security office. Kindle was driving a black sport-utility .vehicle that belonged to Kindle's girlfriend. Kindle's girlfriend was incarcerated at the time. Kindle, Nicholson, and Williams left with Og-

den for the social security office around 9:00 a.m. or 9:30 a.m.

- Evidence from Williams' phone showed he was not in the area at the time of the murder. Detective Duplechain testified that Williams intended to help Kindle and Nicholson murder appellant, but Williams apparently changed his mind and left while Ogden was at the social security office.

- Around 12:20 p.m., Nicholson's phone sent a text to appellant's phone that read, "you cooln', it's coming, bro (sic)."

- Surveillance video from PLS Check Cashers shows Ogden approaching a teller around 12:40 p.m.

- Ogden cashed a social security check in the amount of $748.

- Records show a call from Kindle's phone to appellant's phone at 12:49 p.m.

- A witness living in the apartment complex where Ogden's body was discovered testified the witness heard gunshots around 1:00 p.m.

- A witness who heard gunshots saw a black male trying to put a gun back into his waistband shortly after the gunshots. The same witness saw the male drive a burnt red sedan away from the scene. When shown a photo of appellant's maroon Mercury Sable, the witness testified that appellant's vehicle looked like the vehicle the witness saw leaving the scene.

- Around 1:35 p.m., emergency responders dispatched to the scene arrived to find Ogden bleeding from gunshot wounds. A firefighter pronounced Ogden dead. Ogden's wallet was not on his person. Nor did Ogden have much money on his person despite just having cashed his social security check.

- An hour after the shooting, appellant's phone sent a text to an individual that

read, "Check me out on the news, blood. I'm serious [sic] breed."

- After being arrested, appellant stated that on the day of the shooting, he woke up in Missouri City and was there until he went to Jerline Nicholson's house. He stated he arrived there at 2:00 p.m. and then went to work at 3:50 p.m. Appellant could not explain why his phone was not hitting cell phone towers in Missouri City that morning. Instead, appellant's cell phone was hitting off cell phone towers in the area of the social security office and the shooting scene.

- Police officers discovered appellant's vehicle at a residence associated with Kindle. The vehicle matched the witness's description of the getaway car. Two pieces of clothing retrieved from appellant's car contained particles with characteristics of antimony and barium, which are characteristic of gunshot primer residue.

- In a phone call appellant made while incarcerated, appellant stated that he left the $40 "present" in the car. Police officers surmised that appellant was referring to the .40 caliber pistol. Police officers went back and searched appellant's car a second time. They discovered a .40 caliber pistol. Appellant indicated in these phone calls that he would be in trouble if the police officers searched his car.

- In phone calls appellant made while incarcerated, appellant also stated that Ogden fired a weapon at him, and appellant talked about an accidental discharge.

- Experts compared test shots fired from the gun found in appellant's vehicle with casings remaining at the scene. The record contained evidence that each weapon creates unique markings on fired bullets and casings.

- The markings on three casings found at the crime scene matched the markings found on bullets test-fired.

- An autopsy of Ogden's body revealed that he suffered four gunshot wounds and died as a result of those wounds.

Appellant asserts this evidence is insufficient to support his conviction. The record contains evidence that Ogden left his apartment with three men—Nicholson, Kindle, and Williams—who took Ogden to the social security office. After Ogden received a social security check, Nicholson and Kindle took Ogden to PLS Check Cashers, and Ogden cashed the check there. Appellant makes a variety of arguments as to why the evidence of his involvement is insufficient.

*1. Text messages*

Messages from appellant's phone show appellant was with Nicholson the night before the shooting and that appellant had communications with Kindle and Nicholson while Kindle and Nicholson were with Ogden waiting for him to receive and cash his check. Appellant asserts that his text messages do not, in and of themselves, show a plan to rob Ogden and an intent to murder him. But, the evidence showed that Nicholson knew Ogden was going to cash a social security check. The text messages between Nicholson and appellant suggest Nicholson told appellant to check Ogden's pockets and take Ogden's wallet, which presumably contained the money from the check. Ogden's wallet was missing when emergency dispatchers reached the scene. Based on the evidence that appellant and Nicholson were together the night before the shooting, the text message from Nicholson the morning of the shooting, and evidence that appellant, Nicholson, and Kindle were communicating while Nicholson and Kindle were at the social security office and PLS Check Cashers, the jury reasonably could have in-

ferred appellant was aware that Ogden was receiving and cashing a social security check and that appellant was involved in a plan to rob Ogden and take that money.

Appellant argues that the identity of the cell-phone users could not be definitively established, but the record contained evidence that the text messages were sent via a cell phone registered to Nicholson to a cell phone registered to appellant. The record also contains evidence that calls were placed from the cell phone registered to Kindle to the cell phone registered to appellant. When police apprehended appellant, he listed his phone number as the number of the phone that received the messages, Nicholson listed his phone number as the number associated with the phone purported to be Nicholson's phone, and Kindle listed his phone number as the number associated with the phone purported to be Kindle's phone. There was no evidence that someone borrowed the phones or the phones went missing during the shooting episode. Based on this evidence, the jury reasonably could have inferred that appellant, Nicholson, and Kindle in fact were using the phones registered to them. *See Wesbrook*, 29 S.W.3d at 111 (holding that appellate courts view evidence in light most favorable to the verdict).

*2. Physical evidence found in appellant's car*

The physical evidence found in appellant's car suggested appellant was at the scene of the shooting. The State presented an expert in firearms who testified that a gun found in appellant's car was uniquely capable of creating the casings that were found at the scene. Also, police found clothing in the back of appellant's car that tested positive for gunshot residue.

Appellant argues that the physical evidence does not prove he was involved in the murder because the gunshot residue

on appellant's clothing did not establish that he had fired a gun, appellant's DNA was not found on the gun found in his car, Ogden's blood was not found on appellant's clothing, and no evidence belonging to Ogden was found in appellant's car.

The State's firearms expert testified that DNA is recovered from guns only about fifty percent of the time, so not finding appellant's DNA on the gun does not establish that appellant did not fire the weapon. Similarly, the failure to find Ogden's blood on appellant's clothing does not establish that appellant did not shoot Ogden. Officer David Smith testified that the shooter likely was standing outside of the car and firing into the car from a distance. Responders found Ogden, who was disabled, buckled into the back seat of the car. The jury reasonably could have concluded from these circumstances that Ogden had little ability to struggle and thereby spill blood on appellant's clothing.

Appellant argues that the trajectory of the bullets and location of the shooter could not be definitively established without an eyewitness, but Officer Smith testified that based on the location of the bullet holes and the location of the casings, the shooter likely was standing near the door of the driver's side of the vehicle. The window of the driver's side of the vehicle was down, and based on Ogden's entrance and exit wounds, the bullets appeared to come from that location.

This physical evidence found in appellant's car allowed a reasonable jury to conclude that appellant was at the scene.

*3. Appellant's statements after the shooting*

The jury viewed the text messages and physical evidence in conjunction with statements and other communications appellant made after the shooting. Following the shooting, appellant texted another individ-

ual to "check out" appellant on the news. This text suggested appellant was involved in some happening being reported on the news the afternoon of the shooting.

Appellant told police officers that he was in Missouri City until early afternoon on the date of the shooting, but appellant's cell phone records showed otherwise. The evidence showed appellant's cell phone was located in areas consistent with the locations of Nicholson, Kindle, and Ogden during the times they were at the social security office and PLS Check Cashers. Appellant points out that the cell-phone activity simply showed he was in the same area as the social security office and PLS Check Cashers and that the cell-phone towers encompassed a large area. Even so, that area did not include Missouri City. Appellant's inventions about his whereabouts during the shooting suggest a consciousness of guilt. *See Guevera v. State,* 152 S.W.3d 45, 50 (Tex.Crim.App.2004).

Once incarcerated, appellant made statements in phone calls that suggested he was involved in the shooting. Appellant talked about Ogden firing back at him, he talked about accidentally discharging the gun, and he expressed significant anxiety about police officers having access to his car. Appellant emphasized in several phone calls that he needed someone to go to his car to get the "tool" out of there. When appellant was informed that the police were processing his car, appellant used an expletive to express his distress over that news. These statements, which led police to find a gun in appellant's car, indicated that appellant knew the gun was there and was concerned that the police might find it and link it to the shooting.

Sergeant Burton surmised the statements about Ogden firing at appellant and about the gun accidentally discharging were "self-serving" attempts to set up a defense, but these statements by appellant were admissions he was at the scene of the shooting and that he shot Ogden. The evidence showed that Ogden did not have a weapon. The firearms expert also testified that the trigger on appellant's gun was sticky and would not have discharged accidentally.

Appellant argues that no eyewitness identified him as being present at the scene, there was no surveillance video of the shooting, and appellant's fingerprints were not found on any of the evidence, but the jury reasonably could have inferred appellant was present at the scene based on his statements in phone calls, the text message he sent after the shooting, the communications he had with Nicholson and Kindle during the episode, witness testimony that appellant's car was seen leaving the scene, and the physical evidence found in appellant's car.

*4. Appellant's lack of relationship with the complainant*

Appellant argues that Kindle and Nicholson were identified as suspects before appellant. He notes that Nicholson gave three different versions of what happened. According to appellant, Williams became a suspect only because he shared a phone with Nicholson, and Williams was eliminated as a suspect even though he gave Ogden a ride to the social security office with Nicholson. Appellant asserts Kindle's girlfriend, who owned the black sport-utility vehicle, identified Nicholson and Kindle as associates with access to the vehicle, but she did not identify appellant. Appellant does not explain how these facts establish the insufficiency of evidence to support appellant's conviction.

Appellant argues that there was little evidence of a relationship between appellant and Ogden and that Ogden's brother testified he had never met appellant. But, the record does contain evidence that ap-

pellant was associated with Nicholson, an individual who did know Ogden and knew Ogden was planning to cash a large check.

The record contains evidence that appellant made statements in phone calls from the jail that he fired a gun at Ogden, or the gun accidentally discharged. The record contains physical evidence that appellant's vehicle was seen leaving the scene, and a witness testified that the driver of the vehicle had been fumbling with a gun shortly after the shooting. Appellant's vehicle contained the weapon used to kill Ogden, and appellant's clothes contained gunshot residue. In addition to this evidence, appellant exchanged communications before and during the episode with other individuals who were with Ogden at the time of the shooting.

The record contains sufficient evidence to support appellant's conviction for capital murder. *See Owolabi*, 448 S.W.3d at 150; *Mayreis*, 462 S.W.3d at 576. Accordingly, we overrule appellant's first issue.

### B. Denial of Motion to Suppress

In appellant's second and third issues, appellant asserts that the trial court abused its discretion in denying his motion to suppress. He claims the record evidence does not support the trial court's conclusions of law. Appellant moved to suppress a DVD recording of Sergeant Joel Burton interviewing him. Appellant asserts that (1) he was not warned of his right to have an attorney appointed to advise him before and during any questioning, (2) he did not voluntarily waive his rights, (3) he was improperly induced to speak with police, and (4) the interview contained impermissible hearsay. After conducting a hearing, the trial court denied the motion.

■ We review the trial court's denial of a motion to suppress evidence for an abuse of discretion. *Shepherd v. State*,

273 S.W.3d 681, 684 (Tex.Crim.App.2008). In conducting the review, we give "almost total deference to a trial court's express or implied determination of historical facts" and view de novo the court's application of law to the facts. *Id.* We view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex.Crim.App.2007). The trial court is the sole trier of fact and judge of the credibility of witnesses and the weight to be given to their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex.Crim. App.2007). The trial court may choose to believe or disbelieve any part or all of a witness's testimony. *Green v. State*, 934 S.W.2d 92, 98 (Tex.Crim.App.1996). We sustain the trial court's ruling only if it is reasonably supported by the record and correct on any theory of law applicable to the case. *Laney v. State*, 117 S.W.3d 854, 857 (Tex.Crim.App.2003).

■ A defendant's statement may be admitted into evidence against him if it appears that the accused made the statement freely and voluntarily, without compulsion or persuasion. Tex. Code Crim. Proc. art. 38.21 (West 2016). Article 38.22 of the Texas Code of Criminal Procedure, entitled "When statement may be used," establishes the procedural safeguards for securing the privilege against self-incrimination. *See* Tex. Code Crim. Proc. art. 38.22 (West 2016); *Joseph v. State*, 309 S.W.3d 20, 23 (Tex.Crim.App.2010). No oral statement of an accused made as a result of a custodial interrogation is admissible against the accused in a criminal proceeding unless (1) the statement was recorded and (2) before the statement, but during the recording, the accused was warned of his rights and knowingly, intelligently, and voluntarily waived those rights. *See Miranda v. Arizona*, 384 U.S. 436, 444–45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); *Joseph*, 309 S.W.3d at 23–24.

Texas Code of Criminal Procedure article 38.22, section 2(a), requires the defendant be informed of the following rights:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time.

Tex. Code Crim. Proc. art. 38.22, § 2(a) (West 2016). Warnings provided in a voluntary statement are sufficient to comply with the requirements set forth in article 38.22 if they substantially comply with the requirements of the statute. *See Nonn v. State*, 41 S.W.3d 677, 679 (Tex.Crim.App. 2001). A warning that conveys the same meaning as the statute is sufficient to comply with the statute even if the warning uses slightly different language than the language in article 38.22. *Penry v. State*, 691 S.W.2d 636, 643 (Tex.Crim.App.1985). A failure to administer an article 38.22 warning is reversible error, but an incomplete warning may be sufficient for substantial compliance. *See Rutherford v. State*, 129 S.W.3d 221, 224 (Tex.App.–Dallas 2004, no pet.). A complete failure to advise the accused that he has the right to attorney before and during questioning does not substantially comply with the requirements of *Miranda* or article 38.22. *See Miranda*, 384 U.S. 436, 471, 86 S.Ct. 1602, 16 L.Ed.2d 694; *Coffey v. State*, 435 S.W.3d 834, 842 (Tex.App.–Texarkana 2014, pet. ref'd). But, an incomplete warning regarding the right to have a lawyer appointed to advise the accused before and during questioning can substantially comply. *See Rutherford*, 129 S.W.3d at 224; *Coffey*, 435 S.W.3d at 841.

The State bears the burden of establishing by a preponderance of the evidence that a defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. *Joseph*, 309 S.W.3d at 24. Section (3)(a)(2) does not require the recording to reflect an express waiver of rights. *Rocha v. State*, 16 S.W.3d 1, 12 (Tex.Crim.App.2000). A waiver of rights may be inferred from the actions and words of the person interrogated. *Joseph*, 309 S.W.3d at 25. In evaluating whether appellant knowingly, intelligently, and voluntarily waived his *Miranda* rights, we use a two-pronged test, in which we ask: (1) whether the relinquishment of the right was voluntary by determining whether it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and (2) whether the waiver was made with full awareness of the nature of the rights being abandoned and the consequences of the decision to abandon them. *Id.* We look to the totality of the circumstances in determining whether a statement was made voluntarily. *Id.*

### 1. The trial court's findings

In appellant's second issue, appellant states that the trial court abused its discretion in making its findings of fact and conclusions of law. Appellant requests that we make our own findings and conclusions based on the evidence of the interview admitted at trial.

In findings of fact, the trial court determined that Sergeant Burton advised appellant that appellant had the right to have a lawyer advise him before and during any questioning and that, if appellant was un-

able to employ a lawyer, appellant had the right to have a lawyer appointed for him to advise him during any questioning. The trial court found that appellant voluntarily spoke to Sergeant Burton in a recorded interview. The trial court filed conclusions of law that appellant voluntarily waived his rights and he voluntarily spoke to Sergeant Burton.

Appellant does not identify any particular finding of fact that he claims is unsupported by sufficient evidence. Our review shows that the trial court's findings of fact are supported by record evidence. *See Shepherd,* 273 S.W.3d at 684. We are not free to make our own fact findings. *See id.* Appellant's only specific attack on the trial court's findings is his assertion that the evidence does not support the trial court's conclusion of law that appellant knowingly, intelligently, and voluntarily waived his rights. We address appellant's arguments related to that conclusion of law below. *See id.* (holding that appellate courts view de novo the court's application of law to the facts).

### 2. Sufficiency of the legal warnings

 We presume for the sake of argument that appellant's assertion that Sergeant Burton did not properly administer legal warnings preserved error on appellant's assertion that Sergeant Burton did not advise him that he had a right to have an attorney appointed to advise him before and during any questioning.

Sergeant Burton advised appellant that appellant had a right to have a lawyer present to advise him before and during any questioning and that, if appellant was unable to employ a lawyer, he had the right to have a lawyer appointed to advise him during any questioning. That statement conveyed to appellant that he had the right to have a lawyer present to advise him before and during any questioning. Sergeant Burton omitted the words

"prior to" from subsection four of article 38.22 § 2(a), advising appellant that if he was unable to employ a lawyer, he had the right to have a lawyer appointed to advise him during questioning. *See* Tex. Code Crim. Proc. art. 38.22, § 2(a)(4). Appellant asserts that this omission amounted to a complete failure to provide a warning and therefore the trial court reversibly erred by allowing appellant's statement into evidence. In *Penry,* the Court of Criminal Appeals held that a warning that the defendant had the right to have a lawyer appointed to provide counsel "prior to or during any questioning" was not a complete failure to warn, and the warning substantially complied with the requirements of article 38.22, because the inadvertent mistake did not convey to the defendant that he did not have the right to an attorney both before and during questioning. *See Penry,* 691 S.W.2d at 643. Similarly, the Fifth Court of Appeals held in *Rutherford* that a warning omitting subsection three, which contains the warning that a defendant has the right to an attorney before and during questioning, but reciting subsection four, which advises a defendant that if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him before and during any questioning, was not a complete failure to warn and substantially complied with the requirements of article 38.22. *Rutherford,* 129 S.W.3d at 225. This warning substantially complied with the requirements of article 38.22 because subsection four is the same as subsection three except that it adds the right to free legal counsel to those in need of it. *See id.*

The warnings appellant received informed him that he had the right to an attorney before and during questioning and that if he was unable to employ an attorney, he had the right to have an attorney appointed. Like the officers in

*Penry* and *Rutherford,* Sergeant Burton did not completely fail to warn appellant of his rights; he omitted two words. *See Penry,* 691 S.W.2d at 643; *Rutherford,* 129 S.W.3d at 225. The warning was incomplete. *Penry,* 691 S.W.2d at 643; *Rutherford,* 129 S.W.3d at 225. Although a warning containing all material terms is ideal, the warning appellant received substantially complied with the requirements of article 38.22 because it conveyed to appellant that he had the right to have an attorney appointed and that he had a right to an attorney before and during questioning. *See Penry,* 691 S.W.2d at 643; *Rutherford,* 129 S.W.3d at 225.

### 3. *Affirmative waiver of rights*

 Appellant contends the trial court abused its discretion in denying his motion to suppress his oral recorded statement because the audiotape does not contain an express waiver of his rights. According to appellant, the lack of an express waiver means he did not knowingly, intelligently, and voluntarily waive his rights as required by article 38.22, section 3(a) of the Texas Code of Criminal Procedure. Section 3(a) provides that no oral recorded statement made as the result of a custodial interrogation is admissible against a defendant in a criminal proceeding unless before the statement, but during the recording, the defendant knowingly, intelligently, and voluntarily waives any rights set out in the warning. Tex. Code Crim. Proc. art. 38.22 § 3(a) (West 2016). After each right was read to appellant, he was asked if he understood the right. Appellant nodded and said, "uh-huh," an indication that he understood his rights. Sergeant Burton asked appellant if, keeping in mind all of his rights, appellant wanted to speak with Sergeant Burton. Appellant indicated that he did want to speak. The totality of the circumstances demonstrates appellant's waiver was made with full awareness of his rights, the nature of the rights being abandoned, and the consequences of abandoning them. *See Gomes v. State,* 9 S.W.3d 373, 380 (Tex.App.–Houston [14th Dist.] 1999, pet. ref'd).

### 4. *Alleged inducement to give a statement*

 Appellant asserts that he was improperly induced into giving a statement. In assessing the voluntariness of a statement, we consider the totality of the circumstances under which the statement was made and ultimately whether appellant's will was overborne. *See Creager v. State,* 952 S.W.2d 852, 855 (Tex.Crim.App. 1997). A statement is involuntary if circumstances show that the confession was induced by a promise of a benefit. *Coleman v. State,* 440 S.W.3d 218, 223 (Tex. App.–Houston [14th Dist.] 2013, no pet.).

Sergeant Burton told appellant that the police already had taken other suspects into custody, those suspects were talking to the police, and the police already had enough evidence to get a warrant for appellant's arrest. Sergeant Burton told appellant that, based on those facts, "it might be a good idea for you to talk as well to give your ideas on what's going on."

Appellant argues that Sergeant Burton was required to warn appellant his statement might be used against him and that it was improper to imply that appellant's statement might be used on his behalf. In support of this argument, appellant cites *Gipson v. State,* 819 S.W.2d 890, 893–94 (Tex.App.–Dallas 1991), *aff'd on other grounds,* 844 S.W.2d 738 (Tex.Crim.App. 1992), a case in which the Fifth Court of Appeals held that a statement is per se inadmissible if it follows a statement from an officer that the confession might be used for him. *Id.* at 894. The Court of Criminal Appeals has disapproved *Gipson,* explaining that it was "a case in which a

rule of statutory warnings was improperly used to resolve an issue of voluntariness." *Creager v. State,* 952 S.W.2d 852, 854 (Tex. Crim.App.1997). The high court explained that a statement is inadmissible if an officer does not provide an accused with the warnings that appear in article 38.22.[1] *Id.* at 855. In warning an accused, an officer must warn that "any statement he makes may be used against him at trial." *Id.* The high court pronounced *Gipson* a wrongly decided case because the officer in *Gipson* gave the accused the proper statutory warnings. *Id.* Sergeant Burton's warnings to appellant substantially complied with article 38.22.

Appellant does not point to any evidence, other than Sergeant Burton's statement, showing that appellant's will was overborne. There is no evidence that Sergeant Burton made appellant any promises. Appellant testified at the suppression hearing that Sergeant Burton was not intimidating and the warnings were not hard to understand. Based on this record, we cannot conclude appellant's will was overborne. *See Creager,* 952 S.W.2d at 854; *Coleman,* 440 S.W.3d at 225.

*5. Alleged hearsay and confrontation-clause violation*

▮ Appellant asserts that the videotape of his interview with Sergeant Burton contained hearsay and violated his right of confrontation because Sergeant Burton made "numerous references to other individuals and/or evidence implicating [a]ppellant." Appellant preserved error by raising this objection in his motion to suppress, and appellant renewed the objection when the evidence was offered at trial. Sergeant Burton stated during the interview that other suspects in custody, as well as eyewitnesses, told Sergeant Burton appellant was involved in the shooting.

▮ We presume for the sake of argument that these references were inadmissible because they violated appellant's right to confront witnesses.[2] A confrontation-clause violation is constitutional error that requires reversal unless we conclude beyond a reasonable doubt that the error was harmless. *See* Tex. R. App. P. 44.2(a); *Davis,* 203 S.W.3d at 849. The reviewing court must ask whether there is a likelihood that the constitutional error was a contributing factor in the jury's deliberations in arriving at its verdict. *Scott v. State,* 227 S.W.3d 670, 690 (Tex.Crim.App. 2007). In determining whether the error was harmful, a reviewing court may consider factors including and in addition to (1) the importance of the hearsay statement to the State's case, (2) whether the hearsay evidence was cumulative of other evidence, (3) the presence or absence of

1. Appellant asserts that Sergeant Burton failed to warn him in accordance with article 38.22. We already have addressed appellant's arguments with respect to that issue. Appellant does not assert that Sergeant Burton misread the warning contained in article 38.22, section 2(a)(1) or (2). The record reflects Sergeant Burton properly read appellant the warnings contained in article 38.22, section 2(a)(1) and (2).

2. We need not address whether the statements violated the rule against hearsay because we presume the statements violated appellant's right to confront adverse witnesses. The standard for reviewing harm from a pre-

sumed error in admitting a statement containing hearsay is lower than the standard for reviewing harm from a presumed error in admitting a statement that violated appellant's right to confront adverse witnesses. *Compare Taylor v. State,* 268 S.W.3d 571, 592 (Tex.Crim.App.2008) (holding error in admitting hearsay is not reversible unless it affected the defendant's substantial rights) *with Davis v. State,* 203 S.W.3d 845, 849 (Tex.Crim.App. 2006) (holding constitutional error requires reversal unless appellate court concludes beyond a reasonable doubt that error is harmless).

evidence corroborating or contradicting the hearsay testimony on material points, and (4) the overall strength of the prosecution's case. *Davis*, 203 S.W.3d at 852.

Sergeant Burton advised appellant that the police were talking to a number of individuals and that those individuals, interested in "sav[ing] their own skin," implicated appellant in the murder. Sergeant Burton told appellant that he had information to obtain a warrant but that he still was trying to determine what happened. Sergeant Burton mentioned that the police were interviewing Nicholson and had spoken with Kindle, but he did not identify any particular individual or make any specific statement about what any other individual disclosed.

The hearsay statements were not important to the State's case. The State did not rely on any of those statements, and the evidence showed that the police officers were not relying on those statements either. Sergeant Burton explicitly stated that those statements came from people motivated to lie. The State did not emphasize Sergeant Burton's references to information from other individuals but instead focused on appellant's statement that he was in Missouri City during the shooting.

Under the second factor, the evidence of appellant's involvement in the shooting duplicated other evidence admitted at trial. The record contains evidence showing that appellant was in communication with Nicholson and Kindle during the shooting, appellant exchanged text messages with Nicholson before the shooting that contained statements potentially referencing a plan to rob Ogden, a witness saw an individual driving away from the scene and the description of the vehicle matched appellant's car, a police search of appellant's car yielded a gun uniquely capable of leaving casings found at the scene, and appellant

made statements referring to shooting Ogden during phone calls he made from jail. This same evidence corroborated the hearsay testimony on material points. Finally, the State presented substantial evidence of appellant's guilt. After analyzing the factors relevant to the harm analysis, we conclude that any error in admitting Sergeant Burton's references to statements made by other individuals is harmless beyond a reasonable doubt. *See Davis*, 203 S.W.3d at 854; *Lee v. State*, 418 S.W.3d 892, 901 (Tex.App.–Houston [14th Dist.] 2013, pet. ref'd).

Having found appellant's arguments under his second and third issues lacking in merit, we overrule those issues.

## C. Authentication of Evidence of Appellant's Phone Calls

In issues four through six, appellant asserts that the trial court abused its discretion in admitting into evidence telephone calls appellant made from jail because the State did not properly authenticate the phone calls as required by Texas Rule of Evidence 901.

We review a trial court's ruling under Rule 901 for an abuse of discretion. *Angleton v. State*, 971 S.W.2d 65, 67 (Tex. Crim.App.1998). The rule provides in relevant part that the "requirement of authentication or identification as a condition precedent to admissibility is satisfied when evidence sufficient to support a finding that the matter in question is what its proponent claims." Tex. R. Evid. 901(a). Rule 901(b) lists non-exclusive examples of evidence of authentication or identification that complies with the rule's requirements. Rule 901(b)(5) lists, as an example of evidence sufficient to authenticate a voice record, "[a]n opinion identifying a person's voice—whether heard firsthand or through mechanical or electronic transmission or recording—based on hearing the voice at

any time under circumstances that connect it with the alleged speaker." Tex. R. Evid. 901(b)(5).

Appellant filed a motion to suppress phone calls from jail on the grounds that the calls were not properly authenticated. At the hearing, Homer Dean, an employee contracted by the City of Houston to screen calls made by city's inmates testified regarding how the phone calls are saved into a recording system and how he may access them upon request. He testified that Detective Isaac Duplechain requested appellant's phone calls and Dean provided them. Pete Galvan, an employee of the Harris County Sheriff's Office, testified that he can search calls made by inmates. He identified calls made by appellant using appellant's identification (SPIN) number and cell block location. Sergeant Burton interviewed appellant after appellant was arrested. Sergeant Burton testified that he recognized appellant's voice as the voice on the phone calls.

Appellant argues that Sergeant Burton's testimony was insufficient to authenticate the voice recording because Sergeant Burton's interrogation of appellant lasted only twenty-two minutes and Sergeant Burton did most of the talking. But, Sergeant Burton testified that he was familiar with appellant's voice and that the voice in the telephone calls belonged to appellant. This testimony was sufficient to authenticate the phone calls. *See Banargent v. State*, 228 S.W.3d 393, 401 (Tex.App.–Houston [14th Dist.] 2007, pet. ref'd); *Jones v. State*, 80 S.W.3d 686, 689 (Tex. App.–Houston [1st Dist.] 2002, no pet.).

Appellant notes that the best practice would be for the jails to use a particular recording system that he claims would identify a caller with more certainty. Appellant asserts, without any authority, that in the absence of using the best practice, this court should conclude the telephone calls were not properly authenticated. Research has not revealed any authority holding that absent the use of best practices a phone call cannot be authenticated. To the contrary, Rule 901(b)(5) states that a voice can be authenticated by the testimony of one familiar with the voice. *See* Tex. R. Evid. 901(b)(5); *Banargent*, 228 S.W.3d at 401. That requirement was satisfied.

Appellant's phone calls were properly authenticated under Rule 901.[3] *See* Tex. R. Evid. 901(b)(5); *Banargent*, 228 S.W.3d at 401. The trial court did not abuse its discretion in admitting the tape of the phone calls into evidence. We overrule appellant's fourth through sixth issues.

**D. Harm Analysis for Admission of Alleged Hearsay Testimony**

 In his seventh issue, appellant asserts that the trial court abused its discretion in allowing into evidence an allegedly hearsay statement from Detective Duplechain, who testified that the owner of the black sport-utility vehicle told him who had possession of the vehicle on the date of the shooting and that he learned the driver of the vehicle was David Kindle. Appellant objected on hearsay grounds. Appellant argues that this testimony constituted impermissible hearsay and that it was harmful because it connected him with Kindle.

 We presume for the sake of argument that the trial court erred in overruling appellant's objection. Under this presumption, the error is reversible only if that error affected appellant's sub-

---

**3.** Appellant argues that the phone calls are irrelevant and that they violated the rule against hearsay because they were not properly authenticated. Those arguments are based on the premise that the phone calls were not properly authenticated. Because we have rejected that premise, we need not address these arguments further.

stantial rights to a fair trial. *See* Tex. R. App. P. 44.2(b); *Coble v. State*, 330 S.W.3d 253, 280 (Tex.Crim.App.2010). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Id.* But, if the improperly admitted evidence did not influence the jury or had but a slight effect upon its deliberations, such nonconstitutional error is harmless. *Id.* In performing a harm analysis, we examine the entire record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence. *Id.*

Detective Duplechain's testimony conveyed that the owner of the black sport-utility vehicle told him that Kindle was driving the vehicle the day of the shooting. But, first, Detective Duplechain testified, without objection, that Kindle called the homicide department and stated that his vehicle was left at the scene. Accordingly, the statement from the owner of the black sport-utility vehicle was cumulative of Detective Duplechain's testimony about Kindle's admission. *See Lee*, 418 S.W.3d at 900 (holding cumulative evidence harmless). Second, appellant's phone records showed Kindle called appellant shortly before the shooting. And, third, in an interview with Detective Duplechain, which was admitted into evidence, appellant admitted knowing Kindle by his street name. Because appellant's admission and phone records strongly linked appellant with Kindle, any inference the jury might have drawn linking appellant and Kindle was cumulative of other evidence in the record. *See Ferguson v. State*, 97 S.W.3d 293, 298 (Tex.App.–Houston [14th Dist.] 2003, pet. ref'd). Thus, any error in admitting Detective Duplechain's testimony was harmless.

We overrule appellant's seventh issue. *See Coble*, 330 S.W.3d at 280; *Lee*, 418 S.W.3d at 900; *Ferguson*, 97 S.W.3d at 298.

### E. Harm Analysis for Admission of Speculative Testimony

In his eighth issue, appellant asserts the trial court erred in overruling his objection to Sergeant Burton's testimony that appellant's unusual ability to quickly recall in detail his whereabouts twelve days earlier indicated appellant was making up a story about where he was other than the location of the shooting. Appellant argues that this testimony was outside the scope of Sergeant Burton's personal knowledge and therefore inadmissible under Texas Rule of Evidence 602.

We presume for the sake of argument that this testimony was inadmissible. Under this presumption, the error is reversible only if the error affected appellant's substantial rights to a fair trial. *See* Tex. R. App. P. 44.2(b); *Coble*, 330 S.W.3d at 280. Sergeant Burton testified that he thought appellant may have lied to him regarding appellant's location at the time of the shooting. The record contains evidence that appellant's cell phone showed he was not in Missouri City as he claimed. The record also contains evidence that appellant was communicating with Kindle and Nicholson during the shooting episode and that appellant admitted in phone calls from jail to shooting Ogden. Based on all of the other evidence before the jury, any error in the admission of Sergeant Burton's testimony that appellant may have been untruthful about his location was harmless. *See Coble*, 330 S.W.3d at 280; *Lewis v. State*, 402 S.W.3d 852, 866 (Tex. App.–Amarillo 2013) *aff'd* 428 S.W.3d 860 (Tex.Crim.App.2014) (holding evidence that violated Rule 602 harmless because properly admitted evidence was probative of same issue). We overrule appellant's eighth issue.

### F. Harm Analysis for Admission of Photograph

In his ninth issue, appellant asserts the trial court abused its discretion in allowing into evidence a photograph of appellant and some friends making hand gestures that appellant asserts suggest a gang affiliation. Appellant argues that the trial court erred in overruling his objection to this evidence because the photograph was more prejudicial than probative under Texas Rule of Evidence 403.

We presume for the sake of argument that the trial court abused its discretion in admitting the photograph of appellant and his friends. Under this presumption, we must determine whether the error was harmful. See Tex. R. App. P. 44.2(b); Rolle v. State, 367 S.W.3d 746, 752 (Tex. App.–Houston [14th Dist.] 2012, pet. ref'd). Appellant argues that the admission of the photograph was harmful because individuals in the photo were making hand gestures that suggested gang affiliation. The record contains a photograph of appellant and some individuals. Some of the individuals are making a sign that looks like a "W." The record does not contain any evidence that the gestures in the photograph are affiliated with gang membership, nor does the record contain any evidence that any party involved in the shooting—including appellant—was involved in a gang. There was no discussion or mention of a gang affiliation in opening or closing statement, nor was there evidence that the shooting was a gang-related event.

To the contrary, the evidence showed that Nicholson befriended the complainant's brother when the complainant and his brother moved to Nicholson's apartment complex, and the group of friends conspired to rob the complainant when they learned he was going to retrieve and cash his social security check. Based on this record, we conclude any error in admitting the photograph of appellant and his friends was harmless. See Jones v. State, 944 S.W.2d 642, 654 (Tex.Crim.App. 1996); Rolle, 367 S.W.3d at 752. We overrule appellant's ninth issue.

### G. Harm Analysis for Admission of Victim–Impact Testimony

[33] In his tenth and eleventh issues, appellant asserts the trial court abused its discretion in allowing victim-impact evidence because the evidence was irrelevant under Texas Rule of Evidence 401. The State elicited testimony from Detective Duplechain that he met with the complainant's brother in the hospital and asked Detective Duplechain to describe that experience. Appellant objected. The trial court overruled the objection. Detective Duplechain testified that the complainant's brother took the news of the complainant's death very hard, crying and wailing when he learned what had happened. Detective Duplechain testified that it took the complainant's brother a long time to calm down before he could be interviewed and that breaking the news to the complainant's brother was the worst part of his job. The complainant's brother testified that the complainant was his only family member and that after the complainant's death, he had to go to a nursing home because he did not have anyone to help him. Appellant objected to this testimony.

Presuming for the sake of argument that the trial court abused its discretion in allowing this testimony into evidence, we consider whether the admission of the testimony was harmless. See Tex. R. App. P. 44.2(b); Hines v. State, 396 S.W.3d 706, 710–11 (Tex.App.–Houston [14th Dist.] 2013, no pet.). Detective Duplechain testified without objection that in investigating the murder, he went to the complainant's apartment complex and learned that the

complainant and the complainant's brother had recently moved there from a nursing home. Detective Duplechain testified without objection that the complainant's brother was sick when Detective Duplechain went to the hospital to interview the complainant's brother. The complainant's brother testified without objection that he and the complainant were both disabled and had been taking care of each other. The complainant's brother testified without objection that (1) shortly after the complainant disappeared, the brother ran out of medicine and had to be hospitalized; (2) when the detectives came to talk with the brother, the brother had a nervous breakdown; and (3) the complainant was the brother's only family member and there was nobody to help him through learning of his brother's death.

The testimony from the complainant's brother about his reaction to the complainant's death made it obvious that the complainant's death was very difficult for the complainant's brother. The jury heard evidence that it was difficult for two disabled brothers to move from the nursing home together, that they took care of each other, and that the complainant's brother ended up in the hospital when the complainant did not return to the apartment complex. The jury heard testimony, without objection, that the brothers were the only members of their family alive and that they relied on each other. Given the evidence already in the record, the additional evidence that the complainant's brother had to return to a nursing home and that the brother took the news very hard did not provide the jury with additional information about the impact of the complainant's death on the complainant's brother. *See Williams v. State*, 273 S.W.3d 200, 227 (Tex.Crim.App.2008) (noting that much of the impermissible testimony was heard without objection and evidence of grief was "consistent with the reasonably foresee-

able general inference that a murdered victim would leave grieving relatives behind"); *Bain v. State*, 115 S.W.3d 47, 51 (Tex.App.–Texarkana 2003, pet. ref'd) (noting that jury likely would assume impact of sexual assault on victim).

Moreover, the testimony to which appellant objected comprised only a few sentences during the course of trial. *See Cantu v. State*, 939 S.W.2d 627, 637 (Tex. Crim.App.1997). The focus of the trial was on the investigation of the shooting and the evidence linking appellant to it. In this context, given that the comments to which appellant objected were brief and the record contains many other similar comments to which appellant did not object, we conclude that any error in allowing the statements into evidence was harmless. *See Williams*, 273 S.W.3d at 227. We overrule appellant's tenth and eleventh issues.

## H. Denial of Motion for Mistrial

 In appellant's twelfth issue, appellant asserts the trial court abused its discretion in denying his motion for mistrial after the complainant's brother had an emotional outburst in front of the jury.

After the prosecutor asked the complainant's brother to identify the complainant's body in an autopsy photo, the brother began crying. The trial court took a short recess so the brother could compose himself. As the jury was exiting the courtroom for the break, the brother spontaneously blurted out, "For somebody to do this. My brother never hurt nobody. You son of a bitch." Appellant objected, and the trial court sustained the objection. When the jury returned, the trial court instructed the jury to disregard the brother's statement. Appellant's counsel then moved for mistrial, which the trial court denied.

 We review the denial of a motion for mistrial under an abuse-of-discretion standard. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex.Crim.App.2009). A bystander's conduct that interferes with the normal proceedings of a trial will not result in reversible error unless the defendant shows a reasonable probability that the conduct interfered with the jury's verdict. *Id.* Instructions to the jury generally are considered sufficient to cure improprieties that occur during trial. *Id.*

While the complainant's brother should not have engaged appellant, the outburst was brief. The emotional impact on the witness was apparent from the nature of the evidence before the jury and the witness's inability to keep his composure while testifying. The trial court granted a request to take a recess to give the witness a chance to compose himself. When the outburst occurred, the jury already was in the process of exiting the courtroom. The trial court promptly and properly instructed the jury not to consider the outburst. *See Ladd v. State*, 3 S.W.3d 547, 571 (Tex. Crim.App.1999). Nothing in the record suggests that the incident was of such a nature that the jury could not ignore it and fairly examine the evidence in arriving at a verdict. *See Gamboa*, 296 S.W.3d 574 (Tex.Crim.App.2009). Given the evidence before the jury, we cannot conclude there is a reasonable probability that the witness's brief eruption interfered with the jury's verdict. *See Coble*, 330 S.W.3d at 292–93 (holding trial court did not abuse its discretion in denying motion for mistrial after emotional outbursts); *Landry v. State*, 706 S.W.2d 105, 112 (Tex.Crim.App. 1985) (same).

### I. Prosecutor's Alleged References to Appellant's Failure to Testify

 In his thirteenth issue, appellant asserts that the trial court erred in overruling his objection to the prosecutor's statement during closing argument that appellant claims amounted to a comment on his failure to testify. A comment about a defendant's failure to testify violates the defendant's constitutional privilege against self-incrimination. *See* U.S. Const. amend. V; Tex. Const. art. 1, § 10. When deciding whether such a comment has been made, the reviewing court must consider the offending language from the jury's standpoint, as well as the context in which the comment arose. *See Bustamante v. State*, 48 S.W.3d 761, 765 (Tex.Crim.App. 2001). A violation occurs only if the spoken words clearly refer to the defendant's failure to testify. *Id.* It is not sufficient that the comment might be construed as an implied or indirect allusion. *Id.* The test is whether the language was manifestly intended or was of such a character that the jury necessarily and naturally would take it as a comment on the defendant's failure to testify; we are to resolve any ambiguities in the language in favor of a permissible argument. *Randolph v. State*, 353 S.W.3d 887, 891 (Tex.Crim.App.2011).

During closing argument, the following exchange occurred:

> [Prosecutor]: So, before I sit down, I want to talk to you a little bit about why this defendant is not guilty[4] of the offense of capital murder. And these are the things I want you to think about while defense attorney is giving their closing argument.
>
> In regards to robbery, if the defendant was not committing robbery, was not following the victim from the Social Security office and the Cash Checking Place, over to that apartment complex, why did he lie to the detective? And what are his explanations of the texts

4. The prosecutor's statements are tracked verbatim.

between him and Tommie Lee Nicholson, if he was not attempting to commit robbery?

[Defense counsel]: I object, Your Honor, it's a comment on the defense failure to testify, Your Honor. I object to that argument, Your Honor.

[The Court]: Overruling the objection, but I will remind you, ladies and gentlemen, the defendant has an absolute right not to testify if he chooses not to, and you can't consider that in any way, shape, or form.

[Prosecutor]: And what I'm referring to is how the defense counsel is going to respond to these, in order to explain why he's not guilty of capital murder. In regards to the murder, you heard that statement the defendant made in the phone call. And he's trying to say that the victim shot first, which the evidence doesn't support. And that he's trying to say that the victim bucked up and that—I just want you to remember and I want you to think about, why does the evidence not back that story up? And the reason is because that's not what happened.

Appellant argues that the prosecutor's question regarding the explanation for the text messages is a comment on his failure to testify. The prosecutor immediately clarified, however, that she was referring to questions she wanted the jury to consider while defense counsel gave his closing argument. The prosecutor wanted the jury to listen for counsel's explanation of the text messages, and her vague pronoun, "his," referred to defense counsel, not appellant. The prosecutor's language was not unambiguously a comment on appellant's failure to testify. *See Wolfe v. State,* 917 S.W.2d 270, 279 (Tex.Crim.App.1996); *Humaran v. State,* 478 S.W.3d 887, 900 (Tex.App.–Houston [14th Dist.] 2015, pet. ref'd). Accordingly, the trial court did not

err in overruling appellant's objection. *See Randolph,* 353 S.W.3d at 891. We overrule appellant's thirteenth issue.

**J. Statements Regarding the Prosecutor's Opinion During Closing Argument**

 In his fourteenth and final issue, appellant asserts that the trial court erred in overruling his objection to the prosecutor's closing argument because the prosecutor improperly injected her personal opinions and because the prosecutor invited the jury to speculate about matters that were outside or unsupported by the record.

The prosecutor stated the following during closing argument:

[Prosecutor]: In preparing for this case, it struck me how little this defendant cared about human life. It's a sad thing about our society, and it's a really sad thing about this defendant. His lack of remorse. His lack of caring about this man whom he took out of this world. This case is also about common sense. Because you don't leave your common sense at the door, you take it into the jury room, and you get to put together what happened that day based on the evidence that you have. I submit to you that based on the evidence, this is what happened.

These individuals got together and, I believe Bilal Williams was originally involved, and had eventually chickened out. But they got together and they came up with a plan to rob this victim. He was an easy target, he was going to have a substantial amount of cash, and they saw their opportunity. And I believe it was Tommie Lee Nicholson who came up with the entire plan. I think he was the mastermind, but he was smart enough to not be the gunman. He left that to this defendant. And he told this

defendant, you come up with the gun, you rob us all of our wallets, and then we'll split the proceeds of what we have.

[Defense counsel]: Objection, there is no evidence of what Tommie Lee Nicholson said, Your Honor. That's improper jury argument.

[The Court]: All right. Ladies and gentlemen, you're going to be the judges of what was presented by the evidence and the testimony.

To preserve error, the complaining party must make a complaint to the trial court by a timely request, objection, or motion that states the grounds for the desired ruling with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds are apparent from the context. Tex. R. App. P. 33.1(a); *Pena v. State,* 353 S.W.3d 797, 807 (Tex. Crim.App.2011). The record also must show that the trial court ruled on the request, objection, or motion either expressly or implicitly or refused to rule on the request, objection, or motion and the complaining party objected to the refusal. Tex. R. App. P. 33.1(a); *Pena,* 353 S.W.3d at 807.

The trial court did not rule on appellant's objection. Accordingly, appellant did not preserve error in the trial court on his complaint. *See* Tex. R. App. P. 33.1(a); *Pena,* 353 S.W.3d at 807. Because appellant presents nothing for appellate review, we overrule appellant's fourteenth issue.

Having overruled all of appellant's issues, we affirm the trial court's judgment.