**Affirmed and Memorandum Opinion filed September 21, 2017.**



In The

# Fourteenth Court of Appeals

## NO. 14-16-00484-CR

**DOMINGO AMARO-SOLIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1477624**

## M E M O R A N D U M   O P I N I O N

Appellant Domingo Amaro-Solis challenges his conviction for aggravated sexual assault on the grounds that the trial court abused its discretion in admitting allegedly inadmissible testimony under Texas Rules of Evidence 401, 403, and 404(b). Concluding any error in admitting the testimony was harmless, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant knocked on the door of the complainant's apartment and told her

that the apartment complex's maintenance supervisor had sent him to inspect her carpets. The complainant let appellant inside of her apartment. According to the complainant, appellant pulled out a knife and forced the complainant into the bedroom at knife point where he forced sexual contact. While at knife point, the complainant remembered she had something cooking on the stove and told appellant that the food would burn and set off the apartment alarm. She asked appellant to put down the knife while they went into the kitchen to turn off the stove. Appellant left the knife in the bedroom and held onto the complainant as they walked into the kitchen. When appellant went to turn off the stove, he let go of the complainant with one hand. The complainant used that moment to throw appellant against the sink and attempt to run away. Appellant caught her, but she was able to scream for help. A neighbor came running down the stairs and when appellant heard the footsteps, he fled. Transferred by ambulance to a hospital, the complainant underwent a sexual-assault examination.

A police investigation followed. While speaking to the apartment maintenance supervisor, a police officer spotted appellant on the premises. When appellant saw the officer pointing at him, appellant began running. The officer chased him and took him into custody. Appellant was arrested and charged with aggravated sexual assault. Appellant pleaded, "not guilty."

Before trial, the State gave appellant notice of its intent to use the testimony of three residents of the apartment complex who interacted with appellant. Appellant filed a motion in limine objecting to the evidence. The trial court held a hearing outside the presence of the jury. At the hearing, appellant objected to the evidence under Texas Rule of Evidence 404(b) and stated also that unfair prejudice outweighed the probative value of the evidence. The trial court overruled appellant's objections.

2

At trial, the State put on testimony of a maintenance worker who heard the complainant calling for help and saw appellant leaving her apartment as well as several other witnesses who described the complainant's demeanor as extremely emotional. The complainant identified appellant and testified about how he attacked her. The State also put on testimony from the three residents of the apartment complex.

The first resident testified that a man knocked on his door stating he was coming to clean the carpets. The resident told the man that he would have to go through the office and the man became violent, trying to force himself into the apartment. The resident "stood like this with my fist closed" and the man left. The resident was unable to identify appellant in the courtroom at trial.

The second resident stated she was outside, leaving her apartment, when a man approached and asked about cleaning her carpets. The man asked when she would return. She said she did not know and then left quickly. The resident called the apartment complex management office to report the incident. She testified the man made her feel nervous and scared. The resident did not identify appellant as the man who approached her.

The third resident testified that appellant knocked on her door about inspecting her carpets. According to the resident, appellant told her that the maintenance supervisor sent him to inspect her carpets. The resident recognized appellant from a prior occasion on which he had cleaned her carpets. The resident let appellant into her apartment, and he inspected all the rooms. Appellant then began to ask her questions such as her name, how much she weighed, if she had children, and when her husband would be home. The questions made the resident feel uncomfortable. She pretended to talk on the phone with her husband, asking if he was almost home. Appellant told the resident he was going to talk to the

maintenance supervisor about changing the carpet and left. Appellant came back to the apartment shortly thereafter to retrieve his clipboard and then left again. Appellant came once more to the resident's apartment, but she did not open the door and instead called the apartment office.

Appellant testified in his own defense. He admitted knocking on the complainant's door. Appellant stated that he was planning to begin a carpet-cleaning venture where he would clean carpets for residents who wanted their carpets cleaned more often than the apartment complex would provide the service. According to appellant, he knocked on the complainant's door and began inspecting her carpets. He carried a knife to cut the carpet to determine its age. According to appellant, the complainant offered him some of the food she was cooking, and after he finished eating, she attempted to seduce him. Appellant testified that he was tempted, but did not give in to the seduction. He said that when he rejected the complainant's advances, she became angry, started screaming, and pushed him outside.

The jury found appellant guilty as charged and assessed punishment at fifty five years' confinement.

### ISSUES AND ANALYSIS

In three issues, appellant challenges the testimony of the three residents. Appellant asserts that the trial court abused its discretion in admitting the evidence because the evidence is inadmissible under Rule 401, Rule 403, and Rule 404(b). We presume for the sake of argument that appellant preserved error on all three complaints and that the trial court abused its discretion in admitting the evidence. And, we consider whether the presumed errors caused harm.

Admitting evidence that should be excluded by Rule 401, Rule 403, or

404(b) is non-constitutional error. *See Banks v. State*, 494 S.W.3d 883, 895 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *Pittman v. State*, 321 S.W.3d 565, 572 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Under this presumption, the error is reversible only if that error affected appellant's substantial rights to a fair trial. *See* Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Diamond v. State*, 496 S.W.3d 124, 143 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). If the improperly admitted evidence did not influence the jury or had but a slight effect upon its deliberations, such non-constitutional error is harmless. *Id.* In assessing the likelihood that the jury's decision was adversely affected by the error, an appellate court considers everything in the record. *Schmutz v. State,* 440 S.W.3d 29, 39 (Tex. Crim. App. 2014). This review includes testimony, physical evidence, jury instructions, the State's theories and any defensive theories, closing arguments, and voir dire, if applicable. *Id.* Important factors include the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, and may include whether the State emphasized the error and whether overwhelming evidence of guilt was present. *Id.*

**Effect of the Evidence**

Evidence that appellant unnerved other individuals in the apartment complex is prejudicial. In closing argument, the prosecutor told the jury that the testimony of the residents showed appellant's plan, preparation, and intent. Defense counsel pointed out that while the residents probably viewed appellant with suspicion because they had heard about the attack, appellant's actions were consistent with his story that he was attempting to start a carpet-cleaning venture. In particular, defense counsel pointed out that appellant spent a significant amount of time in one

5

woman's apartment, looking at the carpet in every room, but appellant did not try to attack her.

Both defense counsel and the prosecutor used the evidence in closing argument. The evidence hurt appellant's defensive theory because the residents were able to testify that he scared them, but the evidence also helped appellant's defensive theory because appellant was able to show his efforts to start a carpet-cleaning business. Appellant's defensive theory would have been less likely if the record showed he went to only one apartment.

**Strength of the State's Case**

The record shows the State had a strong case against appellant. Appellant admitted that he entered the complainant's home and that he interacted with her. Appellant said, though, that she attempted to seduce him, he spurned her advances, and then she fabricated allegations of sexual assault because she became angry at him for rejecting her. The issue at trial was whether appellant rejected the complainant's alleged attempts to seduce him or whether appellant assaulted the complainant.

*1. Evidence of struggle*

The jury heard testimony from many witnesses showing that the complainant's actions during and after the incident support her testimony. Two witnesses testified that they heard or saw signs of struggle. A maintenance worker testified that he heard the complainant screaming for help. The apartment complex manager testified that she came to the complainant's unit to wait with the complainant for the police. The manager saw that a chair had been knocked over. A third witness testified that she heard the complainant screaming and came running to assist.

## 2. *The complainant's actions*

Several witnesses testified that they interacted with the complainant shortly after the incident. These witnesses took the complainant's allegations seriously. The apartment manager, the responding police officer, and the sexual-assault nurse examiner testified that the complainant was emotional and appeared to have been through trauma. The apartment manager talked about how she counseled the complainant that "at least she was still alive" and had to remind her that "she had children, that there is still a future." The sexual assault nurse examiner testified that the complainant had tears running down her face and that she was crying so hard her nose started running. A while later, the complainant sought therapy sessions to help her deal with what happened. The therapist testified that when the complainant talked about the incident, the therapist could see in her face that the complainant was sad. The therapist diagnosed the complainant with post-traumatic stress disorder.

## 3. *Evidence of appellant's consciousness of guilt*

The jury also heard evidence that appellant's actions showed his consciousness of guilt. *See Clay v. State*, 240 S.W.3d 895, 905 & n.11 (Tex. Crim. App. 2007) (noting that evidence of flight evinces a consciousness of guilt). The maintenance worker who responded to the complainant's screams for help saw appellant leaving the complainant's apartment. When appellant saw the maintenance worker, appellant began running. The maintenance worker gave chase, but could not catch appellant. Appellant also attempted to flee when he saw the police officer talking with the maintenance supervisor. In addition to attempting to flee from the officer and the maintenance worker, appellant seemed to think he might go to jail. Appellant's girlfriend at the time of the incident testified that the day before appellant was arrested, he asked her if she would wait

for him if he went to jail.

### 4. Questions about appellant's account

Appellant made statements at trial that would cause a reasonable juror to question his statements that he was at the apartment complex looking to start a side carpet-cleaning business. First, appellant testified that the venture included a few other people, but when asked if those people could testify, appellant said that he had not yet told the other people about the venture. Second, appellant admitted on cross-examination that he told an investigating officer that he was at the apartment complex to buy wood and he did not say anything about the carpet-cleaning venture. Third, appellant admitted that he did not tell the residents the exact nature of his venture. Appellant told the residents that he was sent by the maintenance supervisor to inspect their carpets. Appellant admitted at trial that this statement was a lie. In fact, appellant was not working with the maintenance team at that time.

### 5. Physical evidence of attack

The sexual assault nurse examiner took swabs from the complainant for testing. In doing so, she noticed a small cut on the complainant's hand that the complainant said was from the knife appellant used. Police obtained a DNA sample from appellant.

The results of tests on the swab obtained from the complainant's vagina showed a sperm fraction. The sperm fraction contained a mixture of DNA from two individuals. Evidence showed that sometimes, if the sperm sample was not cleanly separated from the rest of the biological material, the sperm sample could contain genetic material that matched the complainant. Forensic analysts tested parts of the swabs on two different occasions. The sperm swab contained a

mixture of DNA from two individuals, a major contributor and a minor contributor.

For the first round, analysts at the Houston Forensic Science Center sent the material to a lab in Virginia. During the first test, appellant could not be excluded as a possible contributor to the minor component of the mixture. The Houston Forensic Science Center then tested the material to confirm the test results. The second time, there was not enough of the sample left to obtain sufficient data to reach any conclusion about the minor contributor. Evidence showed that there was a 1 in 690 chance that an unrelated individual of appellant's ethnicity would match the results of the minor contributor to the sperm fraction.

This evidence strongly supported the complainant's testimony. Appellant testified that he never unbuttoned his pants while the complainant testified that appellant penetrated her. The presence of sperm on the swabs supported the complainant's version of events. The complainant testified that her husband had died and she lived alone with her two children. While appellant argued that the DNA statistics meant other Houstonians likely have the same combination of observed characteristics, the percentage of other individuals matching the observed DNA characteristics is still miniscule. And, the jury already knew that appellant was in the complainant's apartment and that the complainant said he attacked her.

For the jury to have accepted appellant's version of events, the jury would have had to believe many improbable things: (1) appellant began working on a venture before ever mentioning it to the other members of the team; (2) the complainant attempted to seduce appellant and then became so angry at him that she started screaming for help as she decided to make up false accusations of sexual assault; (3) the complainant then lied to multiple people and then voluntarily attended therapy sessions where she repeatedly lied about the incident;

9

(4) appellant ran away from the maintenance worker and police officer while believing he was innocent of any wrongdoing; and (5) the sperm collected from the swab came from another male in the tiny percentage of the population that shares appellant's DNA characteristics, at the observed locations.

While the evidence from the three residents is prejudicial, the evidence of appellant's guilt is overwhelming. *See Werner v. State*, 412 S.W.3d 542, 551 (Tex. Crim. App. 2013). We conclude any error in admitting testimony from the three residents was harmless. *See id*. We overrule appellant's issues.

## CONCLUSION

Having concluded that any error the trial court made in admitting testimony from the three residents was harmless and having rejected appellant's challenges, we affirm the trial court's judgment.

/s/    Kem Thompson Frost
       Chief Justice

Panel consists of Chief Justice Frost and Justices Jamison and Busby.
Do Not Publish — TEX. R. APP. P. 47.2(b).

10