**Affirmed and Memorandum Opinion filed September 30, 2021.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-20-00175-CR**

---

**JACOBE DANTE PAYTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 400th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 17-DCR-077001A**

---

## MEMORANDUM OPINION

Appellant Jacobe Dante Payton appeals his conviction for murder. *See* Tex. Penal Code § 19.02. In four issues appellant challenges the (1) sufficiency of the evidence to support his conviction; (2) presence of the "wrong" alternate juror during deliberations; (3) exclusion of certain evidence; and (4) denial of a requested instruction on manslaughter. We affirm.

BACKGROUND

## A.    The Offense

Latoyia Jarmon-Thomas, the complainant's mother, testified that on Friday evening after work she had an appointment to have her hair braided. Thomas anticipated that the appointment would last six to eight hours. The complainant, Thomas's seven-year-old daughter, accompanied Thomas to the appointment. Thomas's appointment did not end until approximately 1:00 in the morning. On the drive home the complainant fell asleep in the back seat of the car.

Driving home, as Thomas proceeded through a green light, she saw a white two-door Pontiac Grand Prix approaching the intersection. The Pontiac hit Thomas's car, which came to a stop in the middle of the intersection. Thomas woke the complainant and checked on her; the complainant said she was okay and went back to sleep. Thomas then saw two men get out of the two-door Pontiac and run away.

After the men ran away, a different white Pontiac Grand Prix with four doors drove up. The driver of the four-door Pontiac stopped, rolled down the window, pointed a gun out of the window with his left hand, and began firing. Originally Thomas thought the person firing the gun was a woman because the person had long hair pulled back in a ponytail and a slender build. Thomas heard one shot hit the back window of her car; at the time, she did not realize her car was still operable. After the shooting stopped, Thomas realized the car was running and moved it out of the intersection. Thomas thought she heard five or six shots.

After the shooter drove away, Thomas discovered her daughter had been shot and called 911. The complainant was transported to the hospital where she died from gunshot wounds.

Jeremy Monroe is a tow truck driver who was parked under the freeway at the

intersection where the accident happened. Monroe testified that he saw a white car speed through the red light and hit the darker car. Monroe saw the occupant of the white car get out and start running away. As this man ran away, Monroe saw another car approach and heard shots fired. Monroe identified the shooter as a black male but testified he did not see the shooter's face. After the shooting ended, Monroe went to Thomas's car and called 911 when he realized the child had been shot.

Malik Webb testified that in 2017, at the time of the accident, he drove a white two-door Pontiac Grand Prix. On the night of the shooting, Webb attended a party at a club on South Post Oak Road. Webb saw appellant, who he knew by the nickname "Cobe," at the party that night. At the time, appellant drove a white four-door Pontiac Grand Prix. Webb left the party around 1:30 or 1:45 in the morning with his friend, "Little Trey." Appellant left around the same time.

As Webb was driving Little Trey home, he heard what he thought were gunshots. Webb increased his speed to get out of the area and ran a red light, causing the collision with Thomas's car. When Webb's car came to a stop, he heard gunshots. Webb and Little Trey jumped out of the car and ran toward Webb's brother's house. As Webb and Trey were running, an acquaintance named Bobby drove by and offered them a ride. About five or six minutes later, appellant arrived at Webb's brother's house. Webb asked appellant if appellant knew what happened earlier at the accident scene, and appellant replied, "I don't know; I just started shooting[.]"

## B.  The Investigation

Detective David Stark testified that his investigation led to a suspect described as black with shoulder-length braids or dreadlocks. At that time the description was not specific as to whether the suspect was male or female. After receiving an anonymous tip, Stark began looking into a suspect nicknamed "Cobe." After checking with law enforcement officers at Willowridge High School, Stark learned

that appellant, who used to attend Willowridge, used that nickname.

Detective Gordon Sullivan placed appellant's name in a city-wide database as a suspect. Appellant was subsequently stopped on a traffic offense and taken into custody on outstanding warrants. The arresting officers notified Sullivan, who then requested that appellant be held for questioning. Sullivan conducted a short interview of appellant and testified that, at the time of the interview, appellant had shoulder-length dreadlocks.

Appellant gave two interviews to investigating officers. During the first interview appellant told officers he had been at the same party that Webb attended on the night of the offense. Appellant denied being at the accident scene during the first interview. During appellant's second interview, he admitted driving his white Pontiac Grand Prix the night of the offense. Appellant further admitted that he saw the accident scene, saw Webb's car, and heard four to six gunshots. Appellant told the officers he uses his left hand to shoot.

### C.    The Forensic Evidence

Five cartridge cases were recovered from the scene of the shooting. Four of the casings were determined to be relevant to the present case based on their caliber, how long they had been at the scene, and their proximity to the shooting. After interviewing appellant and learning that appellant admitted to being at the scene in his car, detectives obtained a search warrant for appellant's car and processed the car for evidence. Police discovered another nine-millimeter cartridge casing under the driver's seat of appellant's car. Police tested the interior of appellant's car and discovered gunshot residue on areas around the driver's side door and window.

Webb testified that he had seen appellant with a "green handgun." Several months after the shooting, Officer Reggie Rodriguez recovered a green handgun in

an unrelated arrest of three men in Katy. A forensic firearms expert tested bullets from the gun recovered by Rodriguez. Detectives learned that all five cartridge casings—four from the scene and one from appellant's car—were the same caliber, same brand, and had been fired from the army-green colored handgun recovered by Rodriguez. Sullivan learned that the green handgun had been reported stolen by the owner approximately two months before the shooting.

### D. The Verdict

The jury convicted appellant of the lesser-included offense of murder and sentenced him to 78 years in prison.

## ANALYSIS

## I. Sufficiency of the Evidence

In appellant's first issue he contends the evidence is insufficient to support a conviction for murder. Specifically, appellant argues the evidence is insufficient to show that (1) he committed any crime; and (2) he intended to cause serious bodily injury.

### A. Standard of review and applicable law

We review evidentiary sufficiency challenges under the standard set forth in *Jackson v. Virginia. See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). The reviewing court must consider the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013).

The jury is the sole judge of the credibility of witnesses and the weight to afford testimony. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App.

2012). The jury may reasonably infer facts from the evidence presented, credit the witnesses it chooses, disbelieve any or all of the evidence or testimony proffered, and weigh the evidence as it sees fit. *See Williams v. State*, 473 S.W.3d 319, 324 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). When the record supports conflicting inferences, the reviewing court presumes the trier of fact resolved the conflicts in favor of the State and defers to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual. Tex. Penal Code § 19.02(b)(1). A person may also commit murder by intending to cause serious bodily injury and committing an act clearly dangerous to human life that causes the death of an individual. Tex. Penal Code § 19.02(b)(2).

> **B.** **Sufficient evidence supports the jury's finding that appellant committed the offense.**

Appellant first asserts, "[t]he only evidence the State presented as to the identity of the shooter was a woman with shoulder-length hair." Appellant further asserts there was no physical evidence that identified appellant as the shooter. To the contrary, the record supports the following circumstances of appellant's guilt:

- The day after the murder, law enforcement received an anonymous tip, which implicated an individual nicknamed "Cobe," a name officers later corroborated was used by appellant. *See Alabama v. White*, 496 U.S. 325, 327, 332 (1990) (An officer's suspicion may be based on information provided by an anonymous tip if that tip exhibits "sufficient indicia of reliability.");
- Appellant admitted driving the white, four-door Grand Prix at the time of the accident and murder and witnessing the accident. *See Wolfe v. State*, 917 S.W.2d 270, 275 (Tex. Crim. App. 1996) (defendant was seen within a few blocks of the crime scene

6

shortly before and after the murder);

- A shell casing fired from the same gun as the casings recovered from the scene was found under the driver's seat of appellant's car. *See Guevara v. State*, 152 S.W.3d 45, 51 (Tex. Crim. App. 2004) (jury could reasonably conclude that the shell casings found in appellant's car that matched shell casings recovered from scene connected the appellant to the murder weapon);

- Webb testified that he knew appellant carried an army-green colored nine-millimeter firearm, which was consistent with the weapon determined to be the murder weapon. *See id.* (defendant was seen shooting a gun of the same caliber as the murder weapon a month before the murder);

- Appellant matched the description of the shooter in that he had long hair in dreadlocks or braids, had a slender build, and used his left hand to shoot. *See Garza v. State*, 213 S.W.3d 338, 345 (Tex. Crim. App. 2007) (defendant matched one of the witness's description of one of the shooters); and

- In addition to the forensic evidence of the casing found under the driver's seat in appellant's car, there was forensic evidence of gunshot residue on the driver's side door and window of appellant's car. *See Diamond v. State*, 496 S.W.3d 124, 134 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (clothing containing gunshot residue found in defendant's car was sufficient to connect defendant to scene of shooting).

Appellant argues that the only evidence as to identity was Thomas's testimony that the shooter was a female with shoulder-length hair. Appellant also argues there was no physical evidence connecting appellant with the shooting. The jury observed appellant's inculpatory statements made to law enforcement and Webb's testimony about appellant's participation in the shooting. By viewing appellant's video statement, the jury observed appellant's shoulder-length hair, slim build, and demonstration of shooting with his left arm. The jury further heard extensive forensic evidence about the shell casings found at the scene that matched the shell casing found in appellant's car. And the jury heard that all five shell casings were

fired from the same weapon, which matched the description of an unusually-colored weapon appellant was known to carry.

It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). Although the parties may disagree about the logical inferences that flow from undisputed facts, where there are two permissible views of the evidence, the jury's choice between them cannot be clearly erroneous. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018). Viewing the evidence in the light most favorable to the verdict, we conclude the evidence was sufficient to establish that appellant was the individual who shot the complainant. *See Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018) ("[J]uries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial.").

### C. Sufficient evidence supports the jury's finding that appellant intended to cause serious bodily injury.

Appellant further asserts that the evidence is legally insufficient to establish that he intended to cause serious bodily injury. The jury heard evidence that appellant fired five shots at the complainant's car then left the scene of the accident. Thomas testified that the shooter pointed the gun at her car and fired. Evidence that a defendant fired a deadly weapon at a victim "lying or sitting in the backseat of the car" has been found sufficient to establish that the defendant intended to cause serious bodily injury. *Threadgill v. State*, 146 S.W.3d 654, 663 (Tex. Crim. App. 2004). The evidence pointed toward at least five shots fired directly at the car where the child was asleep in the back seat.

The jury was entitled to judge the credibility of the witnesses and reconcile

conflicts in their testimony. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). After reviewing the evidence regarding appellant's actions, we conclude it is sufficient to support the jury's conclusion that appellant intended to cause serious bodily injury or death. *See Manuel v. State*, No. 14-01-00061-CR, 2002 WL 834537, at *2 (Tex. App.—Houston [14th Dist.] May 2, 2002, pet. ref'd) (not designated for publication) ("With every additional shot, the inference that appellant intended to cause serious bodily injury grows stronger.").

Viewing the evidence in the light most favorable to the verdict, we conclude the evidence was sufficient to support the jury's conviction for murder. *See* Tex. Penal Code § 19.02(b)(1); *Anderson*, 416 S.W.3d at 888. We overrule appellant's first issue.

## II.    Use of Alternate Juror

In his second issue appellant asserts the trial court erred in denying his motion for mistrial because the wrong alternate juror was permitted to deliberate and render verdicts on guilt-innocence and punishment.

### A.    Relevant Facts

Early in the trial, one of the jurors fell and hurt her foot and ankle over the weekend and was unable to continue when trial resumed the following Monday. The trial court excused that juror and replaced the juror "with an alternate." At that time both alternate jurors were seated with the jury and no decision appears on the record as to which alternate juror would remain to deliberate.

After closing arguments during the guilt-innocence phase, the trial court stated on the record that it instructed the bailiff to separate Ms. Akeena Jewel McDonald, the alternate juror who would not be deliberating with the jury. The trial court asked defense counsel and counsel for the State whether they agreed to release McDonald

9

or whether they wanted McDonald to wait in the event one of the remaining jurors became unable to continue deliberating. The State was not opposed to releasing McDonald. Defense counsel stated he would leave the decision on whether to release McDonald "to the discretion of the Court." The trial court decided to keep McDonald separated from the jury but in the courthouse until after lunch. If McDonald was no longer needed at that time, the court would release her. Neither appellant nor the State objected to the separation of McDonald even though she was the first alternate juror chosen and, according to article 33.011 of the Code of Criminal Procedure, should have deliberated with the jury instead of the second alternate.

The jury, deliberating with the second alternate, returned a verdict of guilty of murder as charged in the indictment. Appellant requested a poll of the jury, which was conducted. Before the punishment phase began appellant objected that the wrong alternate juror had deliberated with the jury during guilt-innocence. Appellant requested a mistrial and orally moved for a new trial. The trial court denied both motions.

### B.    Applicable Law

The trial court has discretion to determine whether a juror has become disabled under article 36.29 of the Code of Criminal Procedure and to seat an alternate juror under article 33.011 of the code. *Scales v. State*, 380 S.W.3d 780, 783 (Tex. Crim. App. 2012); *Foyt v. State*, 602 S.W.3d 23, 46 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd). Article 33.011(b) provides that alternate jurors shall replace jurors found to be disqualified or unable to perform their duties. Tex. Code Crim. Proc. art. 33.011(b). Article 33.011(b) further provides that alternate jurors are to replace jurors "in the order in which they are called[.]" *Id.*

Here, the parties agree that McDonald, who was excused from deliberations, was the first alternate juror to be called at the time of jury selection.

10

## C. Appellant waived error with regard to the use of the alternate juror.

To preserve error for appellate review, a party generally must complain in the trial court. *London v. State*, 490 S.W.3d 503, 506–07 (Tex. Crim. App. 2016). A defendant's complaint may be in the form of (1) a timely, specific objection, (2) an instruction to disregard, or (3) a motion for a mistrial. *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004); *see* Tex. R. App. P. 33.1(a).

An objection is preemptive because it informs the trial court and opposing counsel of the potential for error, while the other two methods of complaint are corrective. *Young*, 137 S.W.3d at 69. A mistrial should be reserved for those cases in which an objection could not have prevented, and an instruction to disregard could not have cured, any prejudice stemming from an event at trial. *Id*. Therefore, a mistrial is appropriate only in "extreme circumstances" involving a narrow class of highly prejudicial and incurable errors. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000).

A party must make a complaint as soon as the grounds for it become apparent. *London*, 490 S.W.3d at 507. That is, "as soon as the [objecting party] knows or should know that an error has occurred." *Id*. (alteration in original) (citation omitted). The preferred method to preserve error is sequential—first to object, then to request an instruction to disregard, and finally to move for a mistrial. *Young*, 137 S.W.3d at 69.

But when a party's first step is to move for a mistrial, we must ask whether the trial court abused its discretion in not taking the most serious action of ending the trial. *See id*. An event that could have been prevented by timely objection or cured by instruction to the jury will not justify a reversal on appeal in favor of a party who did not request these lesser remedies in the trial court. *Id*.; *Foyt*, 602 S.W.3d at

11

In this case, the grounds for objection became apparent at the time the trial court separated McDonald from the jury during its deliberations. The record reflects that counsel for appellant and the State were present during the discussion with the trial court about when to excuse the alternate juror. Appellant did not object at that time, choosing to leave the decision to the court's discretion. Even if a mistrial were the only suitable remedy, appellant's motion for mistrial, made after the jury's verdict, was untimely. *See Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007) ("A motion for mistrial is timely only if it is made as soon as the grounds for it become apparent.").

Because appellant failed to timely object or timely move for mistrial, we conclude appellant failed to preserve error and overrule appellant's second issue. *See id.*; *London*, 490 S.W.3d at 507.

## III. Exclusion of Evidence

In appellant's third issue he asserts the trial court violated his due process rights by excluding evidence of an affidavit from an agent with the federal agency of Alcohol, Tobacco, and Firearms ("ATF").

### A. Relevant Facts

Private investigator Keith Kucifer testified that he located Dante Green, the person found in possession of the army-green colored gun, which was the weapon used in this offense. At the time Green was incarcerated in a federal prison. Kucifer arranged an interview with Green, which lasted five to ten minutes. Green declined to give Kucifer any information about where Green acquired the gun. Kucifer testified that the reason he wanted to talk with Green was because Green "was arrested with the weapon that was determined to be the murder weapon[.]" Kucifer

explained that Green could have gotten the gun from the shooter or could have been the shooter. Before talking with Green, Kucifer checked Green's criminal history and reviewed federal court documents. One of those documents was an affidavit in support of a criminal complaint filed by a special agent with the ATF.

In the seven-page affidavit, the agent asserted the basis for his opinion that he had probable cause to believe Green committed the offense of possession of a firearm/ammunition while engaged in drug trafficking. In stating the basis for probable cause, the agent described surveillance of Green by plain-clothes narcotics detectives noting, "Additionally, GREEN is a known drug dealer and a person of interest in a [sic] two separate homicides."

At trial appellant tried to introduce the ATF agent's affidavit into evidence in an attempt to show that Green could have committed the offense of which appellant was charged. The State objected to use of the affidavit because it gave details about pending charges. Defense counsel responded, "This witness is wanted for murder. . . . We're going to admit a federal certified court document." Defense counsel then argued:

> It's a public document. They have given the impression that they've done everything they could to find this — this Dante Armani Green. We're entitled to rebut this false inference. It's something that's easily identified in court records.
>
> THE COURT: Well, I don't doubt the authenticity of it. I think [the prosecutor] is more on the grounds of relevance and whether an accusation is enough.
>
> [Defense counsel]: It rebuts the inference that they have provided. There's nothing else we learned about him. He is — The gun was in his possession just five months later.

The trial court permitted appellant to ask Kucifer about Green's prior convictions but disallowed questioning on Green's pending charges. Kucifer then

testified that Green had been convicted of possession of a firearm in furtherance of drug trafficking, and distribution and possession of controlled substances. Kucifer further testified that Green had "pending charges of a serious felony in nature." After trial, appellant filed a document entitled, "Defendant's Submission to Comlete [sic] the Trial Court Record of Evidence Document Excluded Outside the Presence of the Jury." In the document appellant stated that "pursuant to Texas Rule of Evidence 103, during his case-in-chief, defendant sought to offer evidence of a certified United States Federal Court filing, probable cause for arrest of a known individual, Dante Armani Green." Appellant continued, "Defense counsel stated his basis for admission of the proposed document, its form, character, and relevance." Attached to that document was the aforementioned ATF affidavit.

B.      **Appellant waived error with regard to his allegation that the trial court violated his due process rights by excluding evidence of an affidavit.**

The Court of Criminal Appeals has held that an accused must clearly articulate to the trial court the constitutional basis supporting the admission of excluded evidence to preserve a constitutional claim for appeal. *Golliday v. State*, 560 S.W.3d 664, 669–70 (Tex. Crim. App. 2018); *Reyna v. State*, 168 S.W.3d 173, 177–80 (Tex. Crim. App. 2005). In *Golliday*, the accused argued on direct appeal that the trial court's rulings limiting his cross-examination of witnesses violated his constitutional due process and confrontation rights. *See Golliday*, 560 S.W.3d at 667. But the accused had only argued hearsay and relevance grounds during his offer of proof, and did not cite to any constitutional provisions when counsel argued for admitting the evidence to the trial court. *Id.* at 670. The Court of Criminal Appeals reversed the appeals court's finding that the trial court violated the accused's rights, noting that (1) preserving error under Texas Rule of Appellate Procedure 33.1 is entirely separate from making an offer of proof under Texas Rule of Evidence 103, and (2)

14

"in order to preserve an argument that the exclusion of defensive evidence violates constitutional principles, a defendant must state the grounds for the ruling that he seeks with sufficient specificity to make the trial court aware of these grounds." *Id.* at 668–71.

The *Golliday* court agreed that although hyper-technical words are not required to preserve error, the complaining party must still "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it." *Id.* at 670 (quoting *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012)). Parties are not permitted to "bootstrap a constitutional issue from the most innocuous trial objection," and the trial court must be afforded the chance to rule on the "specific constitutional basis for admission because it can have such heavy implications on appeal." *Id.* (quoting *Clark*, 365 S.W.3d at 340). The court held that general arguments about hearsay, that proffered evidence is relevant, or that the jury "needed to get the whole picture of the situation," do not put the trial court on notice that an accused is raising a constitutional argument. *See id.* at 670–71.

We cannot reverse a conviction on constitutional grounds when appellant made only an evidentiary argument to the trial court. *See Golliday*, 560 S.W.3d at 669; *Reyna*, 168 S.W.3d at 179. Here appellant argues that the exclusion of the ATF agent's affidavit violated his "right to present a full defense." *See Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (explaining that the United States "Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense."). However, at trial, when appellant introduced the affidavit, he argued the evidence was admissible because the document was authenticated and was necessary to rebut the State's evidence. Appellant never raised a constitutional argument for

15

admitting the evidence. He did not cite to any constitutional provisions, nor did he mention the right to present a complete defense. He did not in any way assert that the court's refusal to admit the affidavit violated his right to present a complete defense.

While the right to present a complete defense is rooted in constitutional protections, *see Holmes*, 547 U.S. at 324, even constitutional rights may be waived if the proper request, objection, or motion is not asserted in the trial court. *Garza v. State*, 435 S.W.3d 258, 260–61 (Tex. Crim. App. 2014); *Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014). At trial, appellant argued that the ATF affidavit was necessary to rebut the State's evidence that they were unable to locate Green. Counsel did not mention due process or that he was being deprived of the right to present a defense.

Because appellant did not articulate that his right to present a complete defense supported the admission of the affidavit, the trial court never had the opportunity to rule on this rationale. Thus, the record reflects that appellant failed to satisfy the preservation-of-error requirements concerning his constitutional complaint because he did not raise a violation of his right to present a complete defense in any way to the trial court. *See Golliday*, 560 S.W.3d at 670–71 (explaining preservation of excluded defensive evidence for constitutional challenge on appeal requires defendant to state grounds for ruling sought with sufficient specificity to make court aware of constitutional grounds); *see, e.g.*, *Reyna*, 168 S.W.3d at 179 (concluding "arguments about hearsay did not put the trial judge on notice that he was making a Confrontation Clause argument").

Accordingly, appellant's complaint that the trial court's exclusion of the affidavit violated his constitutional right to present a complete defense was not preserved for appellate review. We overrule appellant's third issue.

## IV. Lesser-Included Offense Instruction

In appellant's fourth issue he contends the trial court erred in denying his requested instruction on the lesser-included offense of manslaughter.

### A. Standard of review and applicable law

We apply a two-step process to determine whether a defendant was entitled to an instruction on a lesser-included offense. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012). First, we determine whether the offense qualifies as a lesser-included offense under Texas Code of Criminal Procedure Article 37.09. *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011); *see* Tex. Code. Crim. Proc. art. 37.09. This is a question of law. *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007). Next, we determine whether there is some evidence that would have permitted the jury to rationally find that if the defendant was guilty, he was guilty only of the lesser offense. *Id*. at 536.

Although the threshold showing for an instruction on a lesser-included offense is low—more than a scintilla of evidence—the evidence must establish that the lesser-included offense is a valid and rational alternative to the charged offense. *Id*. "[I]t is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; there must be some evidence directly germane to a lesser included offense for the factfinder to consider before an instruction on a lesser included offense is warranted." *Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994).

A person commits murder, in pertinent part, if he

(1) intentionally or knowingly causes the death of an individual, or

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.

Tex. Penal Code § 19.02(b)(1), (2).

17

A person acts "intentionally" with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. Tex. Penal Code § 6.03(a). A person acts "knowingly" with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. Tex. Penal Code § 6.03(b). A person acts "knowingly" with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.*

A person commits manslaughter if he recklessly causes the death of an individual. Tex. Penal Code 19.04(a). A person acts "recklessly" with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. Tex. Penal Code § 6.03(c). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.*

## B.    Application to facts of this case.

Appellant was indicted for capital murder of a child under ten years of age, and murder, specifically, by "intending to cause serious bodily injury, . . . knowingly commit[ting] an act clearly dangerous to human life that caused the death of an individual, . . . to wit: by discharging a firearm in the direction of [the complainant]." As to the first prong of the test, the parties correctly agree that, as charged in the indictment, manslaughter is a lesser-included offense of murder. *See Cavazos*, 382 S.W.3d at 384.

Regarding the second prong, appellant asserts that his statement to Webb when Webb asked appellant what happened at the accident scene was sufficient to

negate the allegation that appellant intended to commit serious bodily injury. Specifically, appellant contends that his statement, "I don't know; I just started shooting" was sufficient to negate culpability for murder and provide a scintilla of evidence of recklessness. We disagree.

For appellant to be entitled to a manslaughter instruction, "[t]here must be some affirmative evidence that [he] did not intend to cause serious bodily injury" and "some affirmative evidence from which a rational juror could infer that [he] was aware of but consciously disregarded a substantial and unjustifiable risk that death would occur as a result of his conduct." *Cavazos*, 382 S.W.3d at 385. Appellant's statement to Webb that he "just started shooting" did not establish manslaughter as a valid, rational alternative to murder as charged in the indictment in this case.

Appellant's statement fails to provide any evidence directly germane to recklessness. To paraphrase the court in *Cavazos*, pulling out a gun, pointing it at a stopped vehicle, pulling the trigger at least five times, fleeing the scene, and later telling a friend, "I don't know; I just started shooting" does not rationally support an inference that appellant acted recklessly at the moment he shot the complainant. *See Cavazos*, 382 S.W.3d at 385 ("Pulling out a gun, pointing it at someone, pulling the trigger twice, fleeing the scene (and the country), and later telling a friend 'I didn't mean to shoot anyone' does not rationally support an inference that Appellant acted recklessly at the moment he fired the shots."). The evidence here does not support a finding of recklessness and does not rise to the level that would convince a rational jury to find that if appellant is guilty, he is guilty of only manslaughter. *Id.*

The trial court did not err in declining to charge the jury on the lesser-included offense of manslaughter. We overrule appellant's fourth issue.

## CONCLUSION

Having overruled appellant's issues, we affirm the trial court's judgment of conviction.

/s/    Jerry Zimmerer
        Justice

Panel consists of Justices Wise, Bourliot, and Zimmerer.

Do Not Publish — Tex. R. App. P. 47.2(b).