**Opinion issued May 28, 2026**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-25-00468-CR

—————————————

**CARLIN DAVID STAPLES, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 103816-CR**

**MEMORANDUM OPINION**

Appellant Carlin David Staples, Jr. pled guilty to four counts of the felony offense of sexual abuse of a child, enhanced by four prior felony convictions. A jury assessed his punishment at eighty years' confinement and a $10,000 fine for each of the four counts. The trial court ordered the sentences to run consecutively.

In two issues on appeal, Staples argues the trial court abused its discretion by (1) admitting unauthenticated recorded jail phone calls during the punishment phase of trial, and (2) ordering that the sentences run consecutively, resulting in a punishment that is "grossly disproportionate" to the crimes committed.

We affirm the trial court's judgment.

## Background[1]

Staples was thirty-eight years old when he met A.D.P, who was then fourteen or fifteen years old.[2] Staples moved into the trailer where A.P.D. lived with her family. A.P.D. testified that she and Staples had sex every day in the trailer for about two months. She became pregnant around the time of her high school homecoming.[3] A.P.D. testified that she believed she was in love with Staples during the sexual encounters. She testified that Staples gave her methamphetamines sometimes before and after they had sex to make the experience better.

---

[1] In this opinion, we use initials for the complainant to protect her privacy. *See* TEX. CODE CRIM. PROC. art. 58.152 (permitting the use of pseudonyms for the victims of certain crimes).

[2] At the time of trial, Staples was forty years old and A.P.D. was seventeen.

[3] A.P.D. gave birth to a boy whom she named after Staples. DNA testing indicates he is the likely father.

Staples was indicted on eleven counts of sexual assault of a child,[4] enhanced by four prior felony convictions: two for burglary of a habitation and two for assault family violence. Staples pled guilty to four counts[5] of sexual assault, a second-degree felony, which carries a punishment range of two to twenty years in prison and a fine of up to $10,000. TEX. PENAL CODE §§ 12.33, 22.011(a)(1), (c)(1), (f). Staples' previous convictions increased the punishment range to that of a first-degree felony, which carries a prison term of five to ninety-nine years or life plus a fine up to $10,000. *Id.* §§ 12.32, 12.42(b).

The case proceeded to punishment, and a jury sentenced Staples to eighty years' confinement and a $10,000 fine for each count. The trial court ordered the sentences to run consecutively. This appeal followed.

## The Telephone Calls

In his first issue, Staples argues the trial court erred in admitting certain recorded phone calls from the Brazoria County Jail without proper authentication. Staples argues that admission of the phone calls during the punishment phase of trial harmed him because they were used, among other things, to establish that if released, he "would seek out A.P.D. again, purportedly to continue having sex with her."

---

[4] *See* TEX. PENAL CODE § 22.011(a) (defining sexual assault); *id.* § 22.011(c)(1) defining "child" as person younger than 17 years of age.

[5] The State abandoned the remaining counts.

3

**A.     Standard of Review and Applicable Law**

Rule of Evidence 901 governs the authentication of evidence including the recording of telephone calls. It provides that to "satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a); *see also Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018) (explaining that Rule 901 "merely requires some evidence sufficient to support a finding that evidence in question is what the proponent claims") (quoting *Reed v. State*, 811 S.W.2d 582, 587 (Tex. Crim. App. 1991)).

Rule 901(b)(5) provides that a voice may be authenticated by

> [a]n opinion identifying a person's voice—whether heard firsthand or through mechanical or electronic transmission or recording—based on hearing the voice at any time under circumstances that connect it with the alleged speaker.

TEX. R. EVID. 901(b)(5). In addition, the identity of a telephone caller may be authenticated through

> self-identification of the caller coupled with additional evidence such as the context and timing of the telephone call, the contents of the statements made during the telephone call, internal patterns and other distinctive characteristics, and disclosure of knowledge and facts known particularly to the caller.

*Morris v. State*, 460 S.W.3d 190, 196 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Mosley v. State*, 355 S.W.3d 59, 69 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd)). Authenticating evidence may be direct or circumstantial. *Butler*

4

*v. State*, 459 S.W.3d 595, 602 (Tex. Crim. App. 2015) (citing *Wallace v. State*, 782 S.W.2d 854, 858 (Tex. Crim. App. 1989)).

We review the trial court's ruling on authentication issues for abuse of discretion. *Fowler*, 544 S.W.3d at 848. Using this deferential standard, we will uphold a ruling on authentication if the trial court's ruling is within the zone of reasonable disagreement. *Id.* (citing *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001)). Under this liberal standard, "it is the jury's role ultimately to determine whether an item of evidence is indeed what its proponent claims; the trial court need only make the preliminary determination that the proponent of the item has supplied facts sufficient to support a reasonable jury determination that the proffered evidence is authentic." *Butler*, 459 S.W.3d 595 at 600. That is, the trial court "need not be persuaded that the proffered evidence is authentic" but must determine only whether the offering party "has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic." *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012) (citing *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007)).

**B.    Admissibility of the Evidence**

During the punishment phase of trial, the State sought to admit several telephone calls Staples made to his wife while in the Brazoria County Jail to shed light on Staples' "mindset" during the "several months" before trial. The State

5

called Detective Juanita Cardozo of the Freeport Police Department to authenticate the recording of the phone calls to Staples' wife, which were identified as State's Exhibit 11. Staples objected to admission of the calls based on hearsay and chain of custody.[6, 7]

Our review of the record establishes that the trial court did not abuse its discretion in admitting Exhibit 11 into evidence. Detective Cardozo testified in response to questioning by the State that she recognized the voice in the calls as that of Staples, and that the phone calls were made while he was in jail.[8] She testified that inmate calls are routinely recorded, that she has received recordings of inmate calls in other cases, and that inmate calls are date-stamped:

> Q: So you're aware at the beginning of each of these calls there's a message—you would agree with me—that says these calls are going to be recorded and I think it says they may be used against you. Correct?
>
> A: Yes, sir.

---

[6] The trial court overruled the hearsay objection based on statements of a party opponent and because the recordings were not offered to prove the truth of the matter asserted.

[7] Staples only argues on appeal about the telephone call recordings to his wife, which were admitted as State's Exhibit 11. He does not complain of the admission of the telephone call recordings of conversations with his brother, which were admitted as State's Exhibit 12.

[8] Before Staples objected to the recordings, Detective Cardozo testified that in addition to recognizing Staples' voice on the calls, the contents discussed during the calls "would be the same topics discussed in this case and things of that nature" and that the recordings were fair and accurate representations of Staples' conversations in the months before trial.

Q:     Okay. And each call that was provided to you said the same thing. Correct?

A:     Correct.

Q:     And then the—all the calls you received then are also dated. Correct?

A:     Correct.

Q:     And those date ranges would fall within the time the defendant has been incarcerated. Correct?

A:     Correct.

Q:     And you've listened I would assume to jail calls in other cases that originated out of the Brazoria County Jail. Correct?

A:     Yes.

Q:     And the same system is used. Correct?

A:     Correct.

Q:     So is your understanding that they—the calls are automatically recorded as soon as the defendant starts making them. Correct?

A:     Correct.

Q:     And does that seem to be what happened in this case, all the calls that were provided to you?

A:     Yes.

Q:     You don't have any reason to believe that they were not taken out of the jail—or the phone calls were not recorded from the jail system. Correct?

A:     Correct.

Q:     And, of course, that would be digitally done. Right?

A:     Yes, sir.

Q:     Okay. And then you're aware that law enforcement agencies, the D.A.'s Office has access to those particular calls that were made from the jail.  Correct?

A:     Correct.

Q:     They can be then pulled off and put onto media. Correct?

A:     Correct.

Q:     And is that what happened in this case, that the calls were taken and then provided to you? Correct?

A:     Correct.

Q:     Okay. Which would fit with your understanding of how the system records calls and makes them available. Is that—is that correct?

A:     Yes, sir.

In response to Staples' questioning, Detective Cardozo testified that she was not "at the jail or any other place recording the[] telephone calls," she never worked for the Brazoria County Sheriff's Department, and she did not know the "actual intricacies of how things are recorded" in the Brazoria County jail. In overruling Staples' objection and admitting the phone calls into evidence, the trial court stated:

> The trial court need only make a preliminary determination that the proponent of the evidence has supplied facts sufficient to support a reasonable jury determination that the proffered evidence is authentic.

8

The jury makes the final determination whether the evidence is what it proposes to be.

Staples argues on appeal that the lack of witness who was "familiar with the recording mechanism" at the Brazoria County Jail or who had any personal knowledge of "how the system operated at the jail, or how the individual recordings were 'linked' up to particular inmates, whether it be through unique individual pin numbers that they dialed in, or otherwise" should have resulted in the exclusion of the recorded calls. Staples argues that Detective Cardozo merely was "handed a disc containing some recordings, listen[ed] to it, and [said,] 'Yep, that sounds like the Appellant to me.'" Staples argues that the underlying recordings themselves were never authenticated. Staples relies on cases where jailhouse calls were admitted after they were authenticated through a witness who was familiar with the recording mechanism at the jail.[9]

The State relies on our opinion in *Garcia v. State*, where we held that a recording of a jailhouse phone call was properly authenticated because (1) there was evidence the call was made from the Harris County Joint Inmate Processing

---

[9] *See Diamond v. State*, 496 S.W.3d 124, 142 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (admitting jail phone calls after testimony regarding how calls are saved into recording system and accessed upon request, but noting that testimony by officer "that he was familiar with appellant's voice and that the voice in the telephone calls belonged to appellant" was "sufficient to authenticate the phone calls"); *Banargent v. State*, 228 S.W.3d 393, 401 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (concluding recordings of jail phone calls properly authenticated through testimony demonstrating how recording system worked and identifying appellant's voice).

Center when the appellant was there, (2) there was evidence the call was made to a phone number later called using the appellant's individual processing number, (3) the recording included a self-identification because it said the call was from "Josh," (4) the call contained facts related to the alleged crime, and (5) the sponsoring witness, a police officer, testified that she recognized Garcia's voice on the call. No. 01-21-00349-CR, 2022 WL 17981855, at *4 (Tex. App.—Houston [1st Dist.] Dec. 29, 2022, pet. ref'd) (mem. op., not designated for publication).

The State argues that the trial did not abuse its discretion because testimony from an investigator that she recognizes a defendant's voice from a prior interview and recognizes the voice in a recording is sufficient to authenticate a recorded jail call. The State notes that the trial court did not have to be persuaded that the proffered evidence was authentic, but only that the State supplied facts sufficient to support a reasonable jury determination that Exhibit 11 was authentic. Relying on *Garcia*, the State argues that Detective Cardozo's testimony was sufficient to meet this threshold finding because the same factors present in *Garcia*—voice identification, call origin, and the self-identification and contextual details—were present and sufficient to support the trial court's authenticity ruling. We agree.

The authentication requirement may be satisfied by testimony "identifying a person's voice—whether heard firsthand or through mechanical or electronic transmission or recording—based on hearing the voice at any time under

10

circumstances that connect it with the alleged speaker." Tᴇx. R. Eᴠɪᴅ. 901(b)(5); *see Diamond v. State*, 496 S.W.3d 124, 142 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). Indeed, in *Garcia*, we acknowledged that "testimony from a law enforcement officer that he was familiar with the appellant's voice from a prior interview and that he recognized it in a recorded call has [] been held to be sufficient to authenticate a recorded jail call." 2022 WL 17981855, at *4 (citing *Diamond*, 496 S.W.3d at 142).

Detective Cardozo testified that she recognized Staples' voice in the calls, that the recordings were date-stamped, and that the phone calls were made while Staples was in jail. She also testified that inmate calls are routinely recorded and that she has received recordings of inmate calls in other cases. The calls also provide context indicating it was Staples on the calls. In the calls, Staples is heard talking to his wife, Nakeda, about his potential sentence, the DNA testing indicating he fathered A.P.D.'s child, the fact that the child looks like him and their son when he was born, and A.P.D.'s cooperation with authorities.

We thus conclude that the trial court satisfied its gatekeeping role by finding the State, as proponent of the evidence, provided facts that were "sufficient to support a reasonable jury determination that the evidence [it] has proffered is authentic." *See Tienda*, 358 S.W.3d at 638. The trial court thus did not abuse its discretion in admitting the telephone calls.

11

We overrule Staples' first issue.

## The Sentences

In his second issue, Staples argues that the trial court erred by "stacking" his four sentences and ordering that they be served consecutively rather than concurrently.[10] He argues that by stacking the sentences, the trial court imposed a sentence that is grossly disproportionate to the crimes committed, violating his rights under the Eighth Amendment of the U.S. Constitution and Article I, Section 13 of the Texas Constitution.[11]

## A. Standard of Review

We review a trial court's decision to stack sentences, or to order that they run consecutively, for abuse of discretion. *See* TEX. CODE CRIM. PROC. art. 42.08(a); *Beedy v. State*, 194 S.W.3d 595, 597 (Tex. App.—Houston [1st Dist.] 2006), *aff'd*, 250 S.W.3d 107, 115 (Tex. Crim. App. 2008).[12] An abuse of discretion generally occurs only if (1) the trial court imposes consecutive sentences when the law requires concurrent sentences, (2) the trial court imposes concurrent

---

[10]    The trial court stacked the prison time but not the fines.

[11]    The Eighth Amendment of the U.S. Constitution forbids the infliction of cruel and unusual punishment whereas Article 1, Section 13 of the Texas Constitution forbids the infliction of cruel or unusual punishment. U.S. CONST. amend. VIII; TEX. CONST. art. I, § 13. *See Duran v. State*, 363 S.W.3d 719, 723–24 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (comparing provisions).

[12]    Article 42.08 of the Texas Code of Criminal Procedure provides that the trial judge has the discretion to order the sentences for two or more convictions to run consecutively. TEX. CODE CRIM. PROC. art. 42.08(a).

sentences when the law requires consecutive ones, or (3) the trial court otherwise fails to observe the statutory requirements pertaining to sentencing. *Beedy*, 194 S.W.3d at 597 (citing *Nicholas v. State*, 56 S.W.3d 760, 765 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd)).

**B.     Discussion**

"[T]he cumulation of sentences does not constitute cruel and unusual punishment." *Stevens v. State*, 667 S.W.2d 534, 538 (Tex. Crim. App. 1984); *Williamson v. State*, 175 S.W.3d 522, 524 (Tex. App.—Texarkana 2005, no pet.). Staples does not seem to contest this statement of law, rather he argues that the cumulation of the sentences in his case is grossly disproportionate to the crimes committed.

The United States Supreme Court has "emphasized that a sentence is grossly disproportionate to the crime only in the exceedingly rare or extreme case." *State v. Simpson*, 488 S.W.3d 318, 322–23 (Tex. Crim. App. 2016) (citing *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)); *see Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006) (orig. proceeding) (noting that "the sentencer's discretion to impose any punishment within the prescribed range [is] essentially 'unfettered'"). The "proportionality analysis is guided by (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission

of the same crime in other jurisdictions." *Williamson*, 175 S.W.3d at 525. To determine whether a sentence is grossly disproportionate under the first factor, we must "judge the severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses." *Simpson*, 488 S.W.3d. at 323. Only in the rare instance in which the reviewing court finds an inference of gross proportionality will a court consider the remaining factors and "compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Id.* (citing *Graham v. Florida*, 560 U.S. 48, 60 (2010)); *see Peto v. State*, 51 S.W.3d 326, 329 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (discussing proportionality analysis set forth in *Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991)).[13]

Staples does not address "the severity of the sentence in light of the harm caused or threatened" to A.P.D., or his prior adjudicated and unadjudicated offenses. *See Simpson*, 488 S.W.3d. at 323. Staples argues instead that his sentence was grossly disproportionate because (1) there was no force used in the

---

[13]    *Harmelin v. Michigan*, 501 U.S. 597 (1991) modified the proportionate-sentence analysis the Supreme Court created in *Solem v. Helm*, 463 U.S. 277 (1983). In *Harmelin*, the Supreme Court held that if a court determines a sentence is grossly disproportionate after comparing gravity of the offense with the severity of the sentence, the court must consider "the sentences received for similar crimes in the jurisdiction and the sentences for similar crimes in other jurisdictions to determine the constitutionality of the sentence." *Peto v. State*, 51 S.W.3d 326, 329 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (citing *Harmelin*, 501 U.S. at 1006).

commission of the crimes, (2) he pled guilty to four counts and "accepted responsibility for his actions," and (3) he has "significant health problems." His arguments lack merit.

First, although Staples concedes that A.P.D. was not capable of consenting given her age when the assaults occurred, he appears to argue that she consented nonetheless to the assaults, because "[p]er her own testimony she was in love with [Staples], wanted to marry him and have his child. When she did get pregnant, she even named her eventual newborn son after [Staples]." We are not persuaded by Staples' argument. We do not agree that our analysis should consider the fact that Staples engaged in a sexual relationship with a minor who believed she loved him (as opposed to committing the same crime with a stranger). *See generally Culton v. State*, 95 S.W.3d 401, 402, 404 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (holding that even though sixteen-year-old engaged in "consensual sexual intercourse" with thirty-four-year-old appellant and named their child after him, automatic life sentence was not cruel and unusual given his "very serious prior criminal history"); *see also generally Delarosa v. State*, 677 S.W.3d 668, 675 (Tex. Crim. App. 2023) ("noting consent is irrelevant in a case of sexual assault of a child").

Second, Staples argues that his guilty pleas to four counts of sexual assault of a child militate against stacking the sentences.[14] He argues that he "conceded to the [j]ury that he understood that he needed to be punished" and that "an appropriate sentence for his crime would be a very significant 30 years in prison." Staples does not cite any authorities in support of this argument.[15] Rather, relevant authorities suggest that remorse and the voluntary nature of a plea play little or no role in our analysis of the severity of the offense. *See Baldridge v. State*, 77 S.W.3d 890, 893 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (concluding appellant's "sincere remorse," was not "compelling" reason to find sentence received was grossly disproportionate to crime); *Bailey v. State*, Nos. 14-01-00486-CR & 14-01-000487-CR, 2002 WL 122295, at *2 (Tex. App.—Houston [14th Dist.] Jan. 31, 2002, no pet.) (mem. op., not designated for publication) ("Appellant's cooperation in the proceedings below, expressions of remorse, and apparent willingness to learn about and receive treatment for his problem may well have been considered by the trial court in its assessment of punishment; however, such considerations play little or no role in our analysis of the severity of the offense.").

---

[14]     Staples told the trial court when he opted to plead guilty that he understood that "the State ha[d] filed a motion to stack and there [was] a potential of these sentences being stacked upon each other."

[15]     Indeed, Staples does not cite caselaw in support of any of his three arguments as to why he contends his sentence was grossly disproportionate.

Last, Staples argues that the punishment was grossly disproportionate given his "significant health problems," which included schizophrenia, depression, post-traumatic stress disorder, bipolar disorder, and heart disease. Again, we are not persuaded. It is well-settled that a defendant's health does not render a crime committed any less severe and thus a defendant's health has no bearing on the "grossly disproportionate" analysis. *See generally Quick v. State*, 557 S.W.3d 775, 789 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) (rejecting argument that appellant's age, deafness, and mental illness lessened his "moral culpability" and warranted shorter sentence, given that no expert testified that mental illness caused him to commit crimes); *see also Turk v. State*, No. 01-94-01190-CR, 1995 WL 694735, at *2 (Tex. App.—Houston [1st Dist.] Nov. 22, 1995, pet. ref'd) (not designated for publication) ("A sentence will generally not be held to violate the eighth amendment because of the defendant's age or infirmity.") (citing cases)[16]; *Jackson v. State*, No. 13-01-497-CR, 2002 WL 366523, at *2 (Tex. App.—Corpus Christi–Edinburg Mar. 7, 2002, no pet.) (not designated for publication) ("The fact that appellant may suffer from a cancerous tumor does not factor into the required analysis regarding the proportionality of appellant's sentence compared to the

---

[16] The Court of Criminal Appeals has held itself to be without authority to hold a punishment excessive on the ground of a defendant's claimed illness and infirmity. *See Treadwell v. State*, 262 S.W.2d 201, 202 (Tex. Crim. App. 1953). However, it is unclear whether the defendant in *Treadwell* challenged his punishment under the Eighth Amendment or the Texas Constitution.

17

severity of the crime. Appellant's disease does not render the crime committed any less severe, nor does it affect the appropriateness of a thirty-year sentence imposed on a repeat felony offender convicted of aggravated robbery."); *Copeland v. State*, Nos. 05-16-00293-CR & 05-16-00295-CR, 2017 WL 3725729, at *3 (Tex. App.—Dallas Aug. 30, 2017, no pet.) (mem. op., not designated for publication) (rejecting argument that punishment was grossly disproportionate given appellant's drug addiction and mental health issues); *Oglesby v. State*, No. 07-15-00002-CR, 2015 WL 5302466, at *3 (Tex. App.—Amarillo Sept. 10, 2015, no pet.) (mem. op., not designated for publication) (holding appellant's mental illness did not render his sentence cruel or unusual).

We hold that Staples failed to establish that his sentence was grossly disproportionate. First, the punishment was within the statutory range.[17] Second, the record reflects that Staples sexually assaulted A.P.D. multiple times and that he provided A.P.D. with alcohol and drugs during the assaults. The record also reflects that Staples is a repeat offender with four prior felony convictions enhancing the punishment range to 25 to 99 years or life per count. Given the

---

[17] There are multiple cases where cumulative sentences in connection with multiple sexual assaults against a child victim have been upheld and the appellant's "cruel and unusual" or "grossly disproportionate" punishment argument overruled. *See Cisneros v. State*, 622 S.W.3d 511, 522–23 (Tex. App.—Corpus Christi–Edinburg 2021, no pet.) (affirming imposition of two consecutive ninety-nine-year sentences for continuous sexual abuse of child); *Williamson v. State*, 175 S.W.3d 522, 525 (Tex. App.—Texarkana 2005, no pet.) (affirming stacked life sentences for appellant who pled guilty to three counts of aggravated sexual assault on a child).

record before us, we cannot say the imposition of consecutive sentences resulted in grossly disproportionate punishment for the offenses for which Staples was convicted.[18]

And even if we conclude that the punishment is grossly disproportionate, Staples failed to carry his burden to present evidence regarding punishments for the same or similar crimes in Texas and in other jurisdictions. Staples does not cite any cases to support his argument that his sentence is disproportionate when compared with other sentences for the same or similar crimes—in Texas or in any other jurisdiction. And there is likewise no evidence in the record of these relevant comparisons. Staples thus failed to establish a grossly disproportionate sentence. *See Trevino v. State*, 676 S.W.3d 726, 730 (Tex. App.—Corpus Christi–Edinburg 2023, no pet.) (overruling argument about grossly disproportionate nature of sentence because, among other things, "appellant provided no evidence necessary for this Court to 'compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions'") (quoting *Simpson*, 488 S.W.3d at 323, 324); *see also Hammer v. State*, 461 S.W.3d 301, 304 (Tex. App.—Fort Worth 2015, no

---

[18] The State points out that, given Staples' admission that he had sex with A.P.D. roughly fifty times, each of which constitutes a separate offense of sexual assault of a child, the four offenses for which he was sentenced represent about eight percent of the sexual assaults to which he admitted. A.P.D. testified that she and Staples had sex daily for about a two-month period.

pet.) (overruling argument that punishment was grossly disproportionate when appellant failed to offer evidence of sentences imposed for same crime in same and other jurisdictions); *Pantoja v. State*, 496 S.W.3d 186, 193 n.4 (Tex. App.—Fort Worth 2016, pet. ref'd) (declining to undertake proportionality analysis because appellant did not offer evidence of sentences imposed for same crime in same and other jurisdictions).

We overrule Staples' second issue.

## Conclusion

We affirm the trial court's judgment.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.

Do not publish. TEX. R. APP. P. 47.2(b).